# Richmond

## WILLIAM HAROLD McKOY v. COMMONWEALTH OF VIRGINIA.

September 1, 1971.

Record No. 7572.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Frederick T. Stant, III (Frederick T. Stant, Jr., on brief), for plaintiff in error.*

*Robert L. Simpson, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

COCHRAN, J., delivered the opinion of the court.

William Harold McKoy was tried by the court and found guilty of the grand larceny of a color television set. From the judgment order sentencing him to confinement in the penitentiary for two and one-half years we granted him a writ of error to consider the question whether the television set was inadmissible in evidence as the product of an illegal search and seizure.

In the afternoon of October 22, 1969 Detective James Christmas, of the Norfolk Police Department Narcotics Squad, received a tele-

phone call from an informant known to him for more than a year, who reported that there was a 1967 or 1968 Cadillac, blue with a black top, bearing Maryland license number 466-839, parked on Tunstall Avenue in the City of Norfolk. The informant stated that the car was being operated by Harold McKoy, that another black male, whose identity he did not know, was in it, that they were getting ready to leave Tunstall Avenue immediately, and that there was heroin in the car.

Detective Christmas, accompanied by Detective Norman, "rushed out" and proceeded by car toward Tunstall Avenue. As they turned west on Brambleton Avenue from Tidewater Drive, they observed the described Cadillac heading east on Brambleton. In the process of turning around they lost sight of the car but a short time later saw it again heading east on Brambleton.

The officers stopped the car and arrested McKoy, the driver, and Harold Knox, the other occupant, for possession of narcotics. Both were searched and placed in handcuffs. The car was also searched on the spot. On the back seat the officers found and seized a color television set which had been stolen the previous day from a motel room in the City of Virginia Beach. A capsule of white powder wrapped in tissue paper also was found over a sun visor in the car and seized but no further information about this product of the search is revealed by the record.

If McKoy's warrantless arrest was lawful then a search incident thereto would be valid. *Draper* v. *United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). But the validity of the search of his car does not necessarily depend upon the validity of McKoy's arrest. Even in the absence of probable cause to arrest McKoy if the officers had probable cause to believe that the car contained contraband they could search it without a warrant under circumstances that would not justify a warrantless search of a residence or an office. *Chambers* v. *Maroney*, 399 U.S. 42, 90A S. Ct. 1975, 26 L. Ed. 2d 419 (1970), *rehearing denied* 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94 (1970).

The arrest was lawful if Detective Christmas had probable cause to believe that a felony had been or was being committed by McKoy. *Brinegar* v. *United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Bryson* v. *Commonwealth*, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970). In assessing the officer's probable cause no less strict standards may be applied than are applicable to a magis-

trate's determination that an arrest or search warrant should issue. *Whiteley* v. *Warden, Wyoming State Penitentiary*, 401 U.S. 560, 91 S. Ct. 1031, 1035-36, 28 L. Ed. 2d 306 (1971).

McKoy's counsel concedes the past reliability of the police informant. Hence, we need only determine whether there were sufficient "underlying circumstances" to justify Detective Christmas' conclusion that in this case the informant was credible or his information reliable. *Aguilar* v. *Texas*, 378 U.S. 108, 114, 84A S. Ct. 1509, 1514, 12 L. Ed. 2d 723, 729 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 413, 416, 425, 89 S. Ct. 584, 587, 589, 594, 21 L. Ed. 2d 637, 642, 644, 649 (1969).

As pointed out in *Spinelli:*

". . . In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

"The detail provided by the informant in *Draper* v. *United States*, 358 U.S. 307, provides a suitable benchmark." 393 U.S. at 416, 89 S. Ct. at 589, 21 L. Ed. 2d at 644.

In *Draper* the informant reported that the suspect had gone to Chicago the day before by train and that he would return to Denver on one of two specified mornings carrying three ounces of heroin. The informant further described Draper's dress, the bag he would be carrying and his unusually fast gait. The *Spinelli* court concluded that a magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. Justice White, in his concurring opinion in *Spinelli*, stated that such detailed information is self-verifying and "may sometimes imply that the informant himself had observed the facts." *Spinelli, supra*, 393 U.S. at 425, 89 S. Ct. at 594, 21 L. Ed. 2d at 649.

In the present case there is a wealth of detail. Not only were the car, driver and other occupant described with specificity but the informant went on to say that McKoy and his companion were at that very moment preparing to remove the car from Tunstall Avenue—information that could scarcely be gleaned except by personal observation.

When Detectives Christmas and Norman stopped the Cadillac much of the detail given to them by the informant was verified by their own observation. *See United States* v. *Soyka,* 394 F.2d 443, *rev'd on rehearing,* 394 F.2d 452 (2d Cir. 1968), *cert. denied,* 393 U.S. 1095, 89 S. Ct. 883, 21 L. Ed. 2d 785 (1969).

If the informant had expressly stated that he had seen the facts reported to Detective Christmas an arrest warrant or a search warrant based on this information clearly would have been valid. *Jones* v. *United States,* 362 U.S. 257, 267-69, 80 S. Ct. 725, 734-35, 4 L. Ed. 2d 697, 705-06 (1960); *McCray* v. *State of Illinois,* 386 U.S. 300, 303-04, 87A S. Ct. 1056, 1058-59, 18 L. Ed. 2d 62, 66 (1967). But the officers could reasonably infer that he had personally seen the facts which he reported. His method of operating with the police so indicated.

In three other instances within the preceding several weeks the informant had reported to Detective Christmas that certain persons were selling narcotics on the streets. He would telephone that such a person, whom he would describe, was then at a certain place with drugs "on him". Upon receipt of this information the officer would proceed to the designated location and arrest the described suspect for possession of narcotics. In one case there had been sufficient time to get an arrest warrant; in the other two cases warrantless arrests had been made, illegal drugs had been found on the suspects, and subsequently they had been convicted.

Under these circumstances Detective Christmas could have been criticized or even charged with dereliction of duty if he had not acted instantly on his informant's tip. With an out-of-state car then leaving Tunstall Avenue the officer could not have been expected to let it escape while he cross-examined his informant to elicit further details about the "underlying circumstances" that prompted the report. He had no time to obtain an arrest or search warrant from a magistrate. In acting promptly we believe that Detective Christmas also acted reasonably.

We conclude that when an officer receives from a known reliable informant a report that a felony is being committed that is so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way then the officer has probable cause to arrest under the *Draper, Aguilar* and *Spinelli* line of cases. Likewise, when an officer receives from a known reliable informant a similarly detailed report that a car contains narcotics he has probable

cause to search the vehicle without a warrant under *Chambers* v. *Maroney, supra.*

The detailed information given to Detective Christmas by a reliable informant known to him, coupled with his own personal verification of much of this detail, meets both these tests of probable cause to our satisfaction.

As Detective Christmas had probable cause to arrest McKoy without a warrant the arrest was valid, and the contraband seized in the search of his vehicle incident to his arrest was admissible in evidence. *See Fierst* v. *Commonwealth*, 210 Va. 757, 761, 173 S.E.2d 807, 810-11 (1970). Moreover, even if the search was not incident to a lawful arrest, Detective Christmas had probable cause to search the McKoy car without a warrant for narcotics which he reasonably believed to be in it. Under either theory the warrantless search was valid and the stolen television set was admissible in evidence against McKoy.

*Affirmed.*

GORDON, J., concurring.

I agree that *Chambers* v. *Maroney*, 399 U.S. 42 (1970), supports affirmance.