252 S.E.2d 326 (1979)
Iran James WASHINGTON
v.
COMMONWEALTH of Virginia.
Record No. 780596.
Supreme Court of Virginia.
March 2, 1979.
Robert P. Geary, Richmond (McGrath & Geary, Richmond, on brief), for appellant.
*327 Todd E. LePage, Asst. Atty. Gen. (Marshall Coleman, Atty. Gen., James T. Moore, Asst. Atty. Gen., on brief), for appellee.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, HARMAN, POFF and COMPTON, JJ.
HARRISON, Justice.
Iran James Washington was convicted by the trial court of robbery and of the use of a firearm in the commission of a felony. He argues that his arrest was without probable cause and consequently an inculpatory statement thereafter made by him was improperly admitted into evidence.
About 10 p. m. on November 29, 1977, Horace C. Hawkins was robbed in his Henrico County apartment by three armed black males. The men took a television set, a stereo receiver and a pistol. During the course of the robbery Hawkins heard one robber call another "Claude". The crime was promptly reported to the Richmond City Police. After talking with the police, Hawkins described the robbery to a friend. The friend, upon hearing the description of the incident and the name "Claude", said that he had a good idea who the robbers were. About an hour and a half later, while driving around Richmond with Hawkins, this friend recognized the occupants of an automobile as the suspected robbers. Richmond Police Officer Steven G. Tedder, who was in the vicinity at the time, was alerted, and he stopped the car. It was driven by the defendant, and there were four other men with him; Lorenzo Lee Dinkins, Claude Alexander Fleming, Junious Powell and Maverick Davis. Officer Tedder testified that Fleming "got out and made motions as if he was gonna run", but was prevented from doing so when Tedder drew his revolver.
The police officer required all the occupants of the car to get out, and Hawkins identified Lorenzo Dinkins and Claude Alexander Fleming as two of the robbers. These were the two men who forced Hawkins to take them upstairs in his apartment and who remained in Hawkins' presence throughout the robbery. The third robber had remained downstairs. Hawkins did not identify the third robber from the remaining three occupants of the car.
Officer Tedder then asked the defendant where he had come from prior to being stopped. Washington replied that he had been at the Convenient Food Store on Mosby Street in Richmond. The police officer, who had been parked at the Convenient Food Store, had seen the vehicle driven by the defendant pass the store. Consequently, this statement, coupled with inconsistent statements from the other two men not identified by Hawkins, led Tedder to conclude that Washington was not telling the truth about his prior whereabouts. Additionally, Tedder testified that he ascertained that the car the defendant was driving was registered in the name of the mother of Maverick Davis. When asked why the owner's son was not driving, Washington's unintelligible reply was that "it was a friend of his".
Henrico Officer J. B. Hill, called to the scene because the robbery occurred in Henrico County, testified that Hawkins identified two of the five suspects as the men who came into his apartment and robbed him. Hill said that he questioned all the parties as to "where they had been, where they were coming from". He said no incriminating questions were asked and that he was just trying to find out where they had been. Hill stated that he was aware that there were three persons involved in the alleged robbery of Hawkins, two having been upstairs with Hawkins, and one remaining downstairs during the robbery. It was the robber who remained downstairs that Hawkins was unable to identify. Hill testified that when he tried to ascertain where the men had been they all gave different answers. Additionally, the officer said he asked if the police could look in the trunk of the automobile "because we had information that the [stolen] goods were in the trunk, but they told us that the key  they didn't have the key to the trunk".
All five of the men were then placed under arrest, given their Miranda warnings, *328 and transported to the Henrico Police Headquarters, where they executed a rights waiver. Washington first denied knowing anything about the robbery. Later, when he learned that the police planned to charge Davis as being the third person involved in the robbery because the car in which the parties were riding was owned by Davis' mother, Washington told the police, "No, don't charge him, I'll make a statement." Washington then admitted that he, together with Dinkins and Fleming, committed the robbery and stole the television, stereo receiver and pistol. A search warrant was obtained, and the three items were recovered from the trunk of the car.
Washington argues that at the time of his arrest the police had no direct evidence of his part in the robbery. He says that the victim could not identify him and that none of the stolen property was found on his person. The defendant argues that he was arrested on suspicion and solely because he happened to be present with two individuals who were identified as two of the three persons who did commit the robbery.
Defendant relies upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), in which it was held that a statement made by a defendant which is the product of an illegal arrest is not admissible against the person. There, the United States Supreme Court said that a warrantless arrest must stand on firmer ground than mere suspicion and that:
"The quantum of information which constitutes probable causeevidence which would `warrant a man of reasonable caution in the belief' that a felony has been committed, Carroll v. United States, 267 U.S. 132, 162 [,45 S.Ct. 280, 69 L.Ed. 543]must be measured by the facts of the particular case." Wong Sun, 371 U.S. at 479, 83 S.Ct. at 413.
See also Jones v. Peyton, 411 F.2d 857, 862 (4th Cir. 1969).
Important to our consideration of this case is the fact that defendant admits that the Richmond Police had a clear right to stop and inspect the vehicle in which defendant and his companions were riding, as well as the men in it. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Howard v. Commonwealth, 210 Va. 674, 173 S.E.2d 829 (1970); Welch v. Riddle, 402 F.Supp. 464 (D.C.Va.1975). Accordingly, we determine only whether the Henrico Police made an arrest upon suspicion, or whether probable cause existed. The facts known to the officers at the time the arrest was made can be summarized as follows:
(a) A robbery had been committed by three black males, all armed with guns. A color television set, a stereo receiver and a pistol had been stolen;
(b) The items stolen were of such size, shape and bulk as would indicate the thieves had some means of transporting the stolen property other than on foot;
(c) Immediately after the car driven by Washington was stopped, one of its five occupants, later identified as Fleming, attempted to flee;
(d) Present in the car was the owner's son, Maverick Davis, thereby indicating a possible connection between Washington and Davis, who was also then a suspect;
(e) Two of the occupants of the car, Fleming and Dinkins, were unequivocally identified by Hawkins as having robbed him some two hours previously. Fleming was sitting in the front seat of the car when it was stopped;
(f) When questioned as to their whereabouts prior to being stopped by the police, all occupants of the car gave inconsistent answers. Specifically, Washington stated that he had recently been at the Convenient Food Store, an assertion which Officer Tedder knew to be false. Tedder had been parked in front of the store and had seen Washington drive by that place;
(g) Neither Washington nor any occupant of the car could or would provide access to its trunk, which the officers had reason to believe contained the stolen articles, and which they asked to examine; and
(h) Since the robbery had been so recently committed, it was doubtful that the stolen articles had been "fenced" or otherwise disposed of. Rather, it was more likely that *329 the articles were still in the possession of the robbers.
We find no objection to the action of the Richmond officers in stopping the vehicle and questioning its occupants. Neither do we find that the five men were detained at the scene for an unreasonable period. Their detention was to enable Henrico officers to investigate and to make reasonable inquiry concerning the crime committed in their jurisdiction. See Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967). We have held that "the test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed". Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970).
In assessing an officer's probable cause for making a warrantless arrest, no less strict standards may be applied than are applicable to a magistrate's determination that an arrest warrant should issue. Schaum v. Commonwealth, 215 Va. 498, 211 S.E.2d 73 (1975); McKoy v. Commonwealth, 212 Va. 224, 183 S.E.2d 153 (1971). In Hollis v. Commonwealth, 216 Va. 874, 876-77, 223 S.E.2d 887, 889 (1976), we said:
"As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Schaum v. Commonwealth, 215 Va. 498, 211 S.E.2d 73 (1975). In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control. Davis v. United States, 133 U.S.App.D.C. 172, 409 F.2d 458 ([D.C.Cir.] 1969)."
Applying the Hollis test, we believe the totality of the circumstances indicated to the police officers that, although only two of the occupants had been definitely identified as the robbers, they had in their presence all three individuals who robbed Hawkins and two others possibly involved as principals or as accomplices. We hold that the facts and circumstances known to the police were sufficient to constitute probable cause to arrest all five.
We find no error in the action of the trial court in admitting into evidence the statement that Washington gave to the police subsequent to his arrest.
Affirmed.
COMPTON, J., concurs in result.