## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

William Lee Durst

April 30, 1991

Case No. (Criminal) 7298

By JUDGE JAMES H. CHAMBLIN

This case is before the Court on two motions of the defendant to suppress certain evidence, and his Motion to Dismiss Count Four of the indictment. The Court heard evidence and arguments of counsel on April 10, 1991. Each motion is addressed below.

### Motion to Suppress Search of Defendant's Person on July 27, 1990

### Facts

On July 27, 1990, Investigator Douglas Poppa of the Loudoun County Sheriff's Department and other officers executed a search warrant at 122 North Filmore Avenue in Sterling, Virginia. The search warrant had been obtained because of narcotics traffic in the house. After Poppa had been at the house for about an hour, the defendant

appeared in the house. He had come to the door and had been met by another officer.

According to Poppa, it is normal procedure to pat down individuals who are in or come in a house being searched. It is done for the safety of the officers. Further, he testified that weapons and narcotics generally are together.

Poppa patted down the defendant. In doing so, he felt a small hard object in the defendant's right front trouser pocket. He removed it and immediately saw it to be a substance that appeared to him to be marijuana tightly wrapped in a plastic (cellophane-type bag). It was about two inches long and as big around as the end of his forefinger. Poppa felt it could have been a knife or other weapon.

Later chemical analysis found the bag to contain about two-hundredths of an ounce of marijuana.

### Legal Conclusions

There is no authority for the proposition that a police officer in a house being searched pursuant to a valid search warrant has the absolute right at any time he is there to pat down ("stop and frisk" in the terms of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)) a person present in the house. During the search, officers can detain occupants of the premises even if they are outside the home. *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587 (1981). Detention and frisk are separate and distinct events. This case is a "stop and frisk" case and not a case of what officers can or cannot do in the execution of a search warrant. There is no question here about the detention of the defendant.

Under *Terry*, a person stopped but not arrested (here Poppa clearly had no probable cause to arrest the defendant) can be searched in a limited way for weapons. *Terry's* companion case, *Sibron v. New York*, 392 U.S. 40, 88 S. Ct. 1889 (1968), makes it clear that *Terry* approved merely a search for weapons (not narcotics) limited to a patting of the outer clothing for concealed objects which may be used as instruments of assault. The pat down can only be based on a reasonable belief that the person is armed

and dangerous. *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338 (1979).

The evidence presented was sketchy and not elaborate, but nevertheless, the Commonwealth still has the burden to show by a preponderance of the evidence that the objective test for the reasonable belief mentioned above is satisfied. As stated in *Terry*, the test is "would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." 88 S. Ct. at 1885.

The only evidence that Poppa had a reasonable suspicion to believe that the defendant was armed and presently dangerous was his presence in a house being searched pursuant to a narcotics search warrant. There was no evidence that Poppa knew the defendant was actually armed or was involved in drug trafficking. The defendant passed another officer to get into the house, but there was no evidence as to what that officer said or did to the defendant. There was no evidence of exactly where in the house the defendant was stopped and patted down or how long he had been in the house or where he might have been in the house before he was encountered by Poppa. Poppa was aware that the defendant has passed by another officer to get into the house.

Knowing merely that the defendant had passed the first officer, a reasonable officer in Poppa's position could only conclude that the first officer had already patted down the defendant and found nothing or that the first officer saw or heard nothing to cause him to believe that the defendant was armed and dangerous. Poppa cannot have the benefit of a reasonable belief or an assumption that the first officer made a mistake or was derelict in his duties unless Poppa can point to definite articulable facts that would warrant such a belief. He did not do so in this case. He testified to nothing that would have warranted a reasonable belief that the defendant was armed and dangerous other than his presence in the house during the search. The defendant's mere presence in the house, considering all the circumstances of this case, is not enough to generate a reasonable suspicion.

The Commonwealth should not be able to prevail by the failure of the officers to take the least intrusive procedure to protect themselves during the search. Poppa

could just as effectively been protected from possible harm by the defendant by simply not letting him in the house in the first place.

Although this is not exactly a *Ybarra* situation, the general principle of that case is applicable. Further, it is not the same situation as in *Harris v. Commonwealth*, 241 Va. 146 (1991) because the container here is not opaque. Also, Poppa had reason to believe what he felt was a weapon.

The motion to suppress arising out of the search of the defendant on July 27, 1990, is granted because Poppa did not have the needed reasonable suspicion to stop and pat down the defendant.

### *Motion to Suppress Search of Defendant's Vehicle on August 30, 1990*

### *Facts*

At approximately 8:30 p.m. on August 30, 1990, Poppa was not in uniform and was driving an unmarked vehicle in the area of the Sterling Mall. This is an area known for its drug trafficking. He saw the defendant sitting in the driver seat of his pick-up truck. Poppa also saw Ryan Testerman, a person known to Poppa for his involvement in narcotics activities in this area of Sterling Park, talking to the defendant.

As Poppa drove by the defendant and Testerman, the latter said something to the effect that Poppa was a cop. Poppa heard Testerman say it. Poppa knew the defendant from prior investigations, including the time the previous month he had taken what appeared to be marijuana from the defendant's person during the search which is the subject of the motion to suppress first addressed herein. Poppa had information from two reliable confidential informants that the defendant had been in drug sales.

As Testerman made his comment, Poppa saw that the defendant had something in his hand, but Poppa could not see what it was. The defendant "went down" out of Poppa's sight and then came back up with nothing in his hand.

Poppa pulled his vehicle in behind the defendant's pick-up truck. Poppa got out of his car with his badge in hand and approached the driver's side of the truck. He asked the defendant what he had in his hand, and the de-

fendant said "nothing." Poppa looked in the vehicle and saw a silver-brass colored smoking device on the console beside the driver's seat which he recognized as a device commonly used to smoke PCP. The defendant would not consent to a search of the truck. Poppa then asked the defendant to exit the truck. He did. Poppa then found contraband in the vehicle near the area where Poppa felt the defendant's hand could have gone when the defendant "went down."

## Legal Conclusions

There was no evidence of any violation of the traffic laws by the defendant. Therefore, Poppa must have pulled his car behind the defendant's truck and approached it with badge in hand because he felt that the defendant was, or was about to be, engaged in criminal activity.

A police officer is entitled to make an investigative stop when he has a particularized and objective basis for suspecting that the person stopped is engaged, or about to be engaged, in criminal activity. *See, Brown v. Texas,* 443 U.S. 47, 99 S. Ct. 2637 (1979); *Leeth v. Commonwealth,* 223 Va. 335 (1982); *Taylor v. Commonwealth,* 6 Va. App. 384 (1988).

A stop or detention occurs when the circumstances would be such that a reasonable person would have believed that he was not free to leave. *Florida v. Royer,* 460 U.S. 491, 103 S. Ct. 1319 (1983); *Moss v. Commonwealth,* 7 Va. App. 305 (1988). I am of the opinion that the defendant was stopped and detained by Poppa when he pulled his vehicle in behind the defendant's truck, got out and approached the defendant with badge in hand. The badge carries with it the same implication as a vehicle with its blue lights flashing.

Poppa knew the defendant's prior involvement in narcotics and narcotics sales. The defendant was talking to another person known by Poppa to be involved in narcotics activities. That person's statement about Poppa being a cop was accompanied by an action on the part of the defendant consistent with an attempt to hide something from Poppa's view. All these events occurred in an area known for narcotics activities. All of the foregoing gave Poppa an objective basis for suspecting that the defendant was, or was about to be, engaged in criminal activity. He

had more than a mere "hunch" that criminal activity was afoot. *See, Lawson v. Commonwealth,* 217 Va. 354 (1976) (a case very similar to the present case). Poppa had the right to stop the defendant. When he approached the car and looked inside, he saw in plain view the smoking device associated with illegal narcotics. *See, Texas v. Brown,* 460 U.S. 730, 103 S. Ct. 1535 (1983). Poppa's observation of the smoking device in plain view meets all the requirements of the "plain view doctrine" stated in *Horton v. California,* 110 L. Ed. 2d 112, 110 S. Ct. 2301, 2308 (1990). Poppa did not violate the Fourth Amendment in arriving at the place from which he viewed the device. Its incriminating character was immediately apparent to Poppa, and he had lawful access to it, i.e., he had probable cause to search the defendant's vehicle for the reason stated below.

Once Poppa saw the smoking device, I am of the opinion that there was probable cause and exigent circumstances for him to search the defendant's vehicle without a warrant. *See, Carroll v. United States,* 267 U.S. 132, 45 S. Ct. 280 (1925); *McKoy v. Commonwealth,* 212 Va. 224 (1971).

The motion to suppress arising out of the search of the defendant's vehicle on August 30, 1990, is denied.

### Motion to Dismiss Count Four of the Indictment

The defendant has moved to dismiss Count Four because it is duplicative of Count Three. They both allege the same offense, to wit, possession of marijuana on July 27, 1990. At argument, the Commonwealth moved to amend Count Three to change the offense date to August 30, 1990. I am of the opinion that such an amendment is permissible under § 19.2-231. The defendant has not yet entered a plea to either count. There is no prejudice to the defendant. It does not change the nature or character of the offense. The time of the offense is not an essential element of the crime. The defendant will have a reasonable time to prepare for trial.

The Motion to Dismiss is denied, and the motion of the Commonwealth to so amend the indictment is granted.