COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Bumgardner and Frank
Argued at Salem, Virginia


ROSSER LEE BROWN
                                                MEMORANDUM OPINION* BY
v.        Record No. 0328-03-3                   JUDGE ROBERT P. FRANK
                                                   DECEMBER 16, 2003
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                            J. Leyburn Mosby, Jr., Judge

                B. Leigh Drewry, Jr. (Cunningham & Drewry, on brief), for
                appellant.

                Leah A. Darron, Assistant Attorney General (Jerry W. Kilgore,
                Attorney General, on brief), for appellee.


        Rosser Lee Brown (appellant) was convicted in a bench trial of one count of statutory

burglary with the intent to commit robbery while armed with a deadly weapon, in violation of Code

§ 18.2-90; four counts of robbery, in violation of Code § 18.2-58; and four counts of use of a

firearm in the commission of a felony, in violation of Code § 18.2-53.1.  On appeal, he contends the

trial court erred in not granting his motion to suppress.  He argues the police did not have reasonable

suspicion to stop his vehicle and did not have probable cause to arrest him.  As we find the police

had reasonable suspicion for the stop and developed probable cause for his arrest, we affirm the

judgments of the trial court.

                                    BACKGROUND

        On the evening of November 20, 2001, William Cofflin was driving up to his home in

Lynchburg when he saw an unfamiliar, gray Jeep Cherokee parked on a pile of leaves in front of his

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

house. He also saw four black males walking down the street. As Cofflin pulled into his driveway, he could see the Jeep's windows were rolled down, although it was a chilly day. The keys were in the car's ignition. Cofflin thought it peculiar that a "nice vehicle" would be parked in a pile of leaves.

Cofflin telephoned the police and reported a suspicious vehicle parked in front of his house. He provided his address, a description of the vehicle, and the license number. Cofflin testified, "that's all I told them." He did not report the reasons that he characterized the Jeep as suspicious.

When Cofflin looked again, the vehicle was driving off down the street in the direction of the Parkwood Trailer Park. Cofflin could not see who was in the car. He found it odd that the headlights were not illuminated, as it was dark.

Officer Ferron received the dispatch referencing the suspicious vehicle in front of Cofflin's house. The dispatch gave Ferron the tag number of the vehicle and its make, a "gray Jeep." As Ferron approached the address, Cofflin flagged down the officer and told him that the Jeep had just driven away. Ferron drove in the same direction as the Jeep.[1] Cofflin testified he did not provide the reasons why he found the Jeep "suspicious" until the police called him later that evening.

As Officer Ferron was looking for the Jeep, he received a second dispatch about an armed robbery at the Parkwood Trailer Court.[2] The suspects were described as four or five black males. Ferron testified at the suppression hearing that he believed "there was [a] possibility that the suspicious vehicle [Cofflin] had told me about and this robbery may be connected." The officer knew the trailer park was in the "next block down" from Cofflin's house.

---

[1] When Ferron began to testify what Cofflin told him to explain why he thought the vehicle was suspicious, the trial court sustained appellant's objection to the hearsay. Therefore, Ferron was not allowed to testify about the information given to him by Cofflin. The trial court only allowed Ferron to testify as to the information contained in the dispatch.

[2] The robbery was reported at 8:15 p.m. Cofflin's call came in sixteen minutes earlier.

Officer Ferron proceeded to the Parkwood Trailer Court. After Ferron interviewed the robbery victims, he advised the dispatcher to "put out a be on the lookout for [the Jeep]." Ferron believed the suspicious vehicle reported by Cofflin might be connected to the robbery because it was parked a block away from the trailer court. Over appellant's objection, Ferron was allowed to testify how he connected the suspicious vehicle with the robbery:

> I knew the location of the suspicious vehicle. It was a block away from the trailer court where the robbery supposedly occurred. Both calls, the suspicious vehicle call, had four to five black males leaving the vehicle. The robbery call was four black males.

Officer Ferron did not indicate that anyone at the scene of the robbery had seen the suspects drive away in a Jeep.

Investigator Danny Viar was monitoring the police radio bulletins while driving in his personal car to the police station. Viar testified he heard the dispatch advising that several black males, driving a Jeep with license plate number of YGW6976, were suspects in a robbery. He then saw the Jeep parked at a convenience store. Investigator Viar observed several black males exit the convenience store and drive away in the Jeep.

On Investigator Viar's order, Officer Sexton activated the lights on his police vehicle and stopped the Jeep.[3] He and other officers approached the Jeep with their guns drawn. They removed the occupants, including appellant, who was driving. The suspects were handcuffed and held at the scene of the stop for a "drive by lineup." The police drove each robbery victim by the Jeep to determine if any of them could identify the suspects as the assailants. Several victims recognized the suspects by their clothing. No one could recognize their faces.

Investigator Viar was informed that the victims had identified the suspects. Officers at the scene of the stop observed a gun and several items taken during the robbery, including a Sony Play

_____

[3] Sexton did not observe any criminal behavior or traffic violations before he stopped the vehicle.

Station and CDs, on the back floorboard of the Jeep in plain view. Based upon this information, Viar ordered the officers on the scene to transport the suspects to police headquarters. During the drive to the police station, appellant spontaneously asked if he could have the BB gun from the Jeep because his mother used it to shoot stray dogs.

During a videotaped interview at the police station, taken within two hours of the offense, appellant initially denied any involvement in the offense. However, he later admitted taking his gun into the trailer and stealing a car radio. He claimed his cohorts actually committed the robberies.

During the suppression hearing, appellant argued his detention and arrest were unlawful, contending all evidence flowing from the stop should be suppressed. The trial court found the police had reasonable suspicion to stop the Jeep. The court also held the victims' identification of the men by their clothing and the fruits of the crime in the vehicle provided probable cause for appellant's arrest.

## ANALYSIS

In reviewing a trial court's denial of a motion to suppress, "[t]he burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980). "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed *de novo* on appeal. Ornelas v. United States, [517 U.S. 690, 691,]116 S. Ct. 1657, 1659, 134 L.Ed.2d 911 (1996). In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers. Id. at [699,] 116 S. Ct. at 1663. We analyze a trial judge's determination whether the Fourth Amendment was implicated by applying *de novo* our own legal analysis of whether based on those facts a seizure occurred. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*); see also Watson v. Commonwealth, 19 Va. App. 659, 663, 454 S.E.2d 358, 361 (1995).

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (footnote omitted).

If the articulated facts support "a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information." Hayes v. Florida, 470 U.S. 811, 816 (1985). In reviewing the record to make a determination of reasonable suspicion, we consider the "totality of the circumstances and view those facts objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).

Applying these principles to the present case, we conclude the police had reasonable suspicion to stop the Jeep. During the motion to suppress, Officer Ferron testified he was dispatched to investigate a "suspicious" Jeep parked on Parkwood Avenue. The dispatcher described the vehicle by its make and license number. When Ferron arrived at Parkwood Avenue, Cofflin "flagged" him down. Although the officer tried to testify that Cofflin told him why the vehicle was suspicious, the trial court sustained appellant's objection to that testimony.

As Ferron drove off in the direction that the Jeep left, he heard a dispatch that four black males had committed a robbery at a nearby trailer park. At this point, he knew that a vehicle, considered "suspicious" by a known citizen informer,[4] had been parked close to the scene of a robbery at the same time as the robbery. He also knew that four or five black males were seen leaving the suspicious vehicle and that four black males were involved in the robbery. He knew

---

[4] On appeal, appellant attempts to argue Cofflin was not a reliable informant and attempts to equate his observations to those of an anonymous tipster. However, he did not present this argument to the trial court, therefore, he did not preserve this issue for appeal. See Rule 5A:18; Scott v. Commonwealth, 31 Va. App. 461, 464-65, 524 S.E.2d 162, 163-64 (2000).

the Jeep had departed the area at approximately the same time the robbers were leaving the area.

Based on this information, Officer Ferron had reasonable suspicion to request issuance of a "be on the look out" for the Jeep. When Investigator Viar saw the Jeep and asked Officer Sexton to initiate the stop, he was not acting merely on an unparticularized "hunch," but on reasonable suspicion. See Ramey v. Commonwealth, 35 Va. App. 624, 629, 547 S.E.2d 519, 522 (2001). This exact vehicle was observed, parked suspiciously, close to the scene of a robbery at approximately the time of the robbery. The vehicle then left the area at the same time that the robbers were leaving the area. The same number of men that were involved in the robbery were seen getting out of the vehicle. Based on these factors, the officers could stop appellant, who was driving the Jeep, "to determine his identity or to maintain the status quo momentarily while obtaining more information."[5] Adams v. Williams, 407 U.S. 143, 146 (1972). See also Miller v. Commonwealth, 16 Va. App. 977, 979-80, 434 S.E.2d 897, 899-900 (1993).

Appellant also argues the police did not have probable cause to arrest him after the stop. We disagree. Based on the information collected during the investigative stop, the police did have probable cause to arrest appellant and take him to the police station.

> A law enforcement officer may lawfully arrest, without a warrant, for a felony or upon "reasonable suspicion" that a felony has been committed by the arrested person. Muscoe v. Commonwealth, 86 Va. 443, 10 S.E. 534 (1890). See also Byrd v. Commonwealth, 158 Va. 897, 164 S.E. 400 (1932).

---

[5] Appellant attempts to argue on appeal that the length and circumstances of the initial detention changed the nature of the stop into an arrest, for which no probable cause existed. However, at trial he argued that "when the arrest was actually made, which was the transport down to [the police station], it was insufficient grounds to do that." Again, as appellant did not present his argument regarding the length and circumstances of the detention to the trial court, we cannot not consider that argument on appeal. See Rule 5A:18; Scott, 31 Va. App. at 464-65, 524 S.E.2d at 163-64.

> The test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed. Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); Fierst v. Commonwealth, 210 Va. 757, 173 S.E.2d 807 (1970).

Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970). The officers in this case had sufficient facts to warrant a belief that appellant was involved in the commission of an armed robbery.

The officers knew that appellant was driving a vehicle seen in the vicinity of the trailer park both before and after the robbery. He and his companions matched the general description of the robbers. Although the victims could not identify them by their faces, several of the victims indicated that appellant and his companions were wearing clothes that the robbers were wearing. Additionally, the police observed a gun and several items taken during the robbery in the Jeep. Based on the "totality of the circumstances," the officers had probable cause to arrest appellant. See Washington v. Commonwealth, 219 Va. 857, 862, 252 S.E.2d 326, 329 (1979).

As the evidence supports the trial court's finding that the officers had reasonable suspicion to stop the Jeep and probable cause to arrest appellant, we affirm the convictions.

Affirmed.