COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia


DERRICK JAMES WILLIAMS

                                                  MEMORANDUM OPINION* BY
v.        Record No. 0471-06-1                    JUDGE WILLIAM G. PETTY
                                                       MARCH 6, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                          Johnny E. Morrison, Judge

             Joseph A. Sadighian, Special Assistant Appellate Defender
             (Catherine E. P. Haas, Assistant Appellate Defender; Virginia
             Indigent Defense Commission, on briefs), for appellant.

             J. Robert Bryden, II, Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


        Derrick James Williams entered conditional guilty pleas and was subsequently convicted for

possession of a firearm by a felon, in violation of Code § 18.2-308.2, possession of cocaine with the

intent to distribute, in violation of Code § 18.2-248, and possession of a firearm while in the

possession of a controlled substance, in violation of Code § 18.2-308.4.  On appeal, he contends the

trial court erred when it denied his motion to suppress because (1) the police relied solely on a

questionable confidential informant and did not have probable cause for the search, and (2) there

were no exigent circumstances to justify the warrantless search.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.  As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

We view the evidence and all reasonable inferences flowing from the evidence in the light most favorable to the Commonwealth, the party prevailing below. Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003). On September 29, 2005, at approximately 10:55 p.m., Detective G.B. Smith of the Portsmouth Police Department received a tip from a known informant. The informant told the detective that he or she knew of a man "holding" cocaine in his pocket. The informant described the man as follows: a heavy-set, black man wearing a light blue, striped shirt, jeans, white "DC" tennis shoes, sitting on or next to the front porch of 2519 Columbus Avenue. When the detective asked whether the man was there "now," the informant said "yes." The tip also included a description of another person who was at the scene as well – a thin, black male wearing a Philadelphia 76ers jersey with cornrows in his hair.

Because Detective Smith was not on duty at the time he received the tip, he called Officer Hawes around 11:00 p.m. and relayed the informant's tip to him. After receiving the tip from Smith, Hawes immediately went to 2519 Columbus Avenue, arriving within five to seven minutes after Smith received the tip. Hawes described 2519 Columbus Avenue as a single-story, brick home. The house has a small, concrete front porch, approximately four-feet-by-five-feet in size, with a black wrought iron railing. The porch is not enclosed, although it does have a small awning above it. The front yard of the house is "just dirt," without landscaping or a fence. Williams' mother, Pamela Battle, owns the house. She stated that since the porch is small, she and her friends and family often sit outside in the yard on nice days. She also testified that the porch and yard are visible from the road.

When Hawes arrived, he saw Williams sitting in a lawn chair to the right of the front porch facing the street. Williams matched the informant's description of the man holding the cocaine. After Hawes and the recruit he was training approached and began speaking to Williams, Williams'

companion, who matched the description of the other individual, fled the scene. Hawes testified, "based on that, I grabbed Mr. Williams and took him into custody." At that point, Hawes removed the cocaine from Williams' pocket. Hawes then walked Williams over to his patrol car to search him. Hawes found a .32 revolver hidden in the waistband of Williams' pants. After completing the search, Hawes placed handcuffs on Williams, placed Williams in the backseat of the police car, and read him his Miranda rights.

Detective Smith stated that he personally knew this informant and had received information from this same informant six times during the six months preceding the tip at issue here. Each tip led to an arrest. The informant was a drug user. Smith also testified that this informant had never given him incorrect or useless information.

Based on this evidence, the trial court denied Williams' motion to suppress. Williams entered conditional guilty pleas, and this appeal followed.

## II. ANALYSIS

Williams raises two questions on appeal: first, that the police did not have probable cause to search him based on the informant's tip and, second, that no exigent circumstances existed to justify the warrantless search. We address each *seriatim*.

### A. Probable Cause

We hold that the informant's tip provided the police with the requisite probable cause to arrest Williams based on the totality of the circumstances present in this case.

Williams bears the burden to show "that the denial of [the] motion to suppress constituted reversible error." Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993). "'Ultimate questions of reasonable suspicion and probable cause'" involve questions of both law and fact, which we review *de novo*. McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690,

691 (1996)).  In performing this analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.  Id. at 198, 487 S.E.2d at 261. We give due weight to the inferences drawn from those facts by resident judges and law enforcement officers.  Id.

We note that Williams challenged the legality of the warrantless search; however, to determine the legitimacy of the search, we must analyze the validity of the warrantless arrest. Essentially, if the police had probable cause to arrest Williams for a felony, they could conduct a search incident to that arrest.  See Chimel v. California, 395 U.S. 752, 762-63 (1969) ("When an arrest is made . . . the arresting officer [may] search the person arrested in order to remove any weapons [and] to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.").

A warrantless arrest is constitutionally valid when officers have probable cause "at the moment the arrest was made . . . ."  Beck v. Ohio, 379 U.S. 89, 91 (1964).  "Probable cause exists where the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense is being committed."  Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (internal quotation marks and citation omitted).  We review the totality of the circumstances to determine whether probable cause existed.  Illinois v. Gates, 462 U.S. 213, 238 (1983).

In conducting this review, we keep in mind that "[t]he determination of probable cause by police officers depends upon practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act, and courts must view and weigh the evidence supporting probable cause as understood by those versed in the field of law enforcement."

Jefferson v. Commonwealth, 27 Va. App. 1, 12, 497 S.E.2d 474, 479 (1998) (internal quotation marks and citations omitted).

Information provided by an informant, rather than a police officer's "'direct observations,'" may provide probable cause as long as "the officer has reasonable grounds to believe that the informant's statement is true." Id. (quoting Gates, 462 U.S. at 242). Courts must conduct a "balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending [the] informant's tip" when determining whether the officer had such grounds. Gates, 462 U.S. at 234.

As we make that determination, we are mindful that "the [informant's] (1) veracity, (2) reliability, and (3) basis of knowledge are 'highly relevant' factors in the overall totality-of-the-circumstances probable cause analysis." Russell v. Commonwealth, 33 Va. App. 604, 610, 535 S.E.2d 699, 702 (2000). Our prior decisions make it clear, however, that "the credibility and basis of knowledge of an [informant] are not independent 'elements' that must be 'proved' in order for a magistrate to find probable cause. Instead, these considerations are merely factors in the overall 'totality-of-the circumstances' analysis." Polston v. Commonwealth, 24 Va. App. 738, 745, 485 S.E.2d 632, 635 (1997). Thus, "the existence of probable cause may be established based upon a combination of the content of the information which the police possess, its degree of reliability and the degree of credibility of the [informant]." Boyd v. Commonwealth, 12 Va. App. 179, 187, 402 S.E.2d 914, 919 (1991).

The factors that form our probable cause analysis "should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case" and "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is probable cause . . . ." Id. (quoting Gates, 462 U.S. at 230) (internal quotation marks omitted). This approach insures that we "consider all factors and their

interrelation to one another in deciding whether there is a fair probability that" a crime had occurred or was occurring when the officer determined to make a warrantless arrest. McGuire v. Commonwealth, 31 Va. App. 584, 594, 525 S.E.2d 43, 48 (2000).

We also note that our Supreme Court has held, "When an officer receives from a known reliable informant a report that a felony is being committed that is so detailed as to raise an inference either of personal observation or of acquisition of the information in a reliable way then the officer has probable cause to arrest." McKoy v. Commonwealth, 212 Va. 224, 227, 183 S.E.2d 153, 156 (1971); see also McGuire, 31 Va. App. at 595, 525 S.E.2d at 49.

In this case, the informant's tip contained "a wealth of detail." McKoy, 212 Va. at 226, 183 S.E.2d at 157. The informant described Williams and his companion with great specificity. The informant also reported that they were sitting outside of the residence at that exact time. The informant knew Williams had cocaine in his pocket as well. Taken as a whole, this qualifies as "information that could scarcely be gleaned except by personal observation." Id. When Officer Hawes approached the house, he was able to verify the information though his personal observations, finding everything just as the informant described. See Gates, 462 U.S. at 241 (In "applying the totality-of-the-circumstances analysis" the Supreme Court has "consistently recognized the value of corroboration of details of an informant's tip by independent police work.").

The trial court was also entitled to infer from evidence that the informant was a drug user that the informant would be able to recognize cocaine on sight. Further, Officer Hawes arrived only five to seven minutes after Detective Smith received the tip, finding Williams exactly where the informant said he was. The trial court could reasonably infer from these facts that the informant saw the cocaine in Williams' possession.

Moreover, Detective Smith personally knew the informant and had received reliable information from the informant in the past that had led to six prior arrests. See Beckner v.

- 6 -

Commonwealth, 15 Va. App. 533, 538, 425 S.E.2d 530, 533 (1993) ("[A] known informant who has given previous information" provides a greater "indicia of reliability" than an anonymous informant. (citing Adams v. Williams, 407 U.S. 143, 146-47 (1972))). Finally, this informant had never been known to give unreliable or useless information. Thus, we hold, based on the totality of the circumstances revealed by this record, that Hawes had probable cause to arrest Williams and that the search yielding the cocaine and gun was therefore a proper search incident to arrest. See Lansdown v. Commonwealth, 226 Va. 204, 214, 308 S.E.2d 106, 112 (1983) ("[I]t is not important that this search may have preceded the arrest, . . . or followed the arrest . . . . [T]he arrest 'followed quickly on the heels of the challenged search,' and this was sufficient to establish the legality of the search." (quoting Rawlings v. Kentucky, 448 U.S. 98, 111 (1980))) (citation omitted).

### B. Exigent Circumstances

Williams also contends that his convictions should be reversed since the police did not have exigent circumstances to justify their entry onto the curtilage of his home. We disagree, and hold that Williams did not have a reasonable expectation of privacy in his front yard, as it was clearly visible from the street, and that the police therefore did not need exigent circumstances in addition to probable cause for Williams' arrest.

It is well settled that "absent (1) exigent circumstances and probable cause or (2) consent, law enforcement agents cannot enter the curtilage of a person's home either to search or seize without previously obtaining a warrant." Jefferson, 27 Va. App. at 16, 497 S.E.2d at 481. At common law, the curtilage was defined as "the area immediately surrounding a dwelling house." United States v. Dunn, 480 U.S. 294, 300 (1987). Whether the area is "place[d] . . . under the home's 'umbrella' of Fourth Amendment protection" is, however, a case-by-case determination. Id. at 301. In making that determination, courts look to four factors:

> [T]he proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

Id. These factors "bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." Id. (citing Oliver v. United States, 466 U.S. 170, 180 (1984)).

Applying the Dunn factors to this case, we conclude that Williams did not have a reasonable expectation of privacy in his front yard and that it was therefore not subject to the same Fourth Amendment protections as Williams' home. While Williams' mother testified that the area immediately adjoined the home and was used for the family to gather with friends and socialize, both factors that tend towards viewing the yard as an area within the home's umbrella of Fourth Amendment protections, those factors are not dispositive.

The area is not enclosed or landscaped in any way. Most persuasively, the area is completely visible from the street. Thus, the area in question was not "protected . . . from observation by people passing by." Id.; see also Shaver v. Commonwealth, 30 Va. App. 789, 793, 797, 520 S.E.2d 389, 395, 397 (1999) (holding appellant had no expectation of privacy when driveway where stolen goods were located was completely visible from the road); cf. Jefferson, 27 Va. App. at 17, 497 S.E.2d at 482 (finding that appellant had a reasonable expectation of privacy in the place of his arrest because "the proximity of the place where [the officer] arrested appellant was extremely close to appellant's house and *could not be viewed by pedestrians and drivers passing in front of the house*" (emphasis added)); United States v. Jenkins, 124 F.3d 768, 773 (6th Cir. 1997) (finding appellant's backyard was an area in which he had a reasonable expectation of privacy because it was "*well shielded from the view of people passing by* on the only public thoroughfare near defendant's property" (emphasis added)). Here, the police were able to stand in a public street and observe Williams, whom they had probable cause to arrest and search, standing in plain view.

- 8 -

We conclude that the area in which the officers observed Williams standing was not subject to Fourth Amendment protection despite its proximity to his home. It is well settled that "[t]he Fourth Amendment [does not] require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." California v. Ciraolo, 476 U.S. 207, 213 (1986). Nor does it "preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." Id.; see also Shaver, 30 Va. App. at 795-96, 520 S.E.2d at 396 ("[W]here private lands are exposed to observation by members of the public who may legitimately come upon the property, a citizen does not reasonably have an expectation of privacy in areas that the passing public can observe." (citing Katz v. United States, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."))).

As we held *supra*, the police had probable cause to arrest Williams and were at his home with the purpose of investigating a known confidential informant's tip, activity that "is clearly legitimate police activity so long as the investigation does not violate applicable constitutional provisions." Divello v. State, 782 N.E.2d 433, 437-38 (Ind. Ct. App. 2003). As he stood in his front yard, Williams was in plain view to passers-by on the public street, including the police. He therefore had no reasonable expectation of privacy affording him the kind of Fourth Amendment protection reserved to one's home. In this situation, the Fourth Amendment does not require a warrant or one of the exceptions to the warrant requirement in order to justify a custodial arrest and a search incident to that arrest. We hold that the officers did not need exigent circumstances as well as probable cause to seize Williams. Illinois v. Andreas, 463 U.S. 765, 771 (1983).

## III.  CONCLUSION

The officers did not offend the Fourth Amendment by entering the yard and arresting

Williams; therefore, we affirm his convictions.

<u>Affirmed.</u>