# Richmond

ROY LEE BRYSON v. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record No. 7260.

Present, All the Justices.

*John H. Kennett, Jr.,* for plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Roy Lee Bryson was indicted for promoting or being concerned in managing, by his operation or conduct of, a lottery commonly known as the numbers game, a felony under Code § 18.1-340. A jury found him guilty as charged. Bryson appeals from the judgment order entered on the verdict fixing his punishment at nine months in jail and a fine of $250.

The numerous assignments of error present two contentions which

merit discussion: (1) the conviction was based upon evidence obtained through illegal search and seizure, and (2) the trial court erred in its instructions to the jury.

Officer H. J. Heath, head of the Vice Squad of the Roanoke City Police Department, was the only witness who testified at the trial. According to Heath, on September 6, 1968, at approximately 11:45 A.M., he and Officer Dyer were driving south on First Street, between Wells Avenue and Loudon, in Roanoke when they saw Bryson standing in front of Nick's Restaurant. Circling the block they parked in an alley and observed Bryson walking across First Street. The officers got out of their car, crossed First Street and caught up with Bryson on the sidewalk. He was alone and not disorderly. When they asked him for identification Bryson fumbled through his wallet. Heath described what he then saw:

"At this time, I could see a rubber band around his ring finger on this right hand. Inside of his hand, I could see a small piece of paper underneath this rubber band."

Upon seeing the paper Heath immediately arrested Bryson, without a warrant, for "being concerned in a lottery". Seizing the paper, Heath saw for the first time, when he unfolded it, that there was a list of numbers written on it. A search of Bryson at police headquarters disclosed other slips of paper with numbers written on them, also introduced in evidence over objection, and $27.50 in small bills and change.

Heath explained the organizational structure and method of operation of the numbers racket in Roanoke. According to his computations the cash bets represented by the numbers found on Bryson aggregated $26.85.

This meager record, as Bryson contends, falls short of showing probable cause for his arrest. Mere possession of a piece of paper attached to his finger by a rubber band is not sufficient to justify the arrest of a man walking alone in an orderly manner on a city street in the middle of the day.

A law enforcement officer may lawfully arrest, without a warrant, for a felony or upon "reasonable suspicion" that a felony has been committed by the arrested person. *Muscoe* v. *Commonwealth*, 86 Va. 443, 10 S. E. 534 (1890). *See also Byrd* v. *Commonwealth*, 158 Va. 897, 164 S. E. 400 (1932).

The test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an of-

fense has been committed. *Brinegar* v. *United States*, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *Fierst* v. *Commonwealth*, 210 Va. 757, 173 S. E. 2d 807 (1970). If the arresting officer had no probable cause to arrest then he could not lawfully search the defendant's person. *Rios* v. *United States*, 364 U. S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960). *But see Terry* v. *Ohio*, 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). (An exception to the rule, inapplicable here, arises when the officer has reasonable grounds to believe that the defendant is armed and dangerous.)

In *Beck* v. *Ohio*, 379 U. S. 89, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) police officers arrested Beck without having any reasonable grounds to believe that he was acting unlawfully. They knew that Beck had a police record for gambling and they had received information, the nature of which was not revealed, that he was engaged in "clearing house" activities, another name for the numbers game. After his arrest Beck was searched and clearing house slips were found, upon which evidence he was convicted of violating the applicable Ohio criminal statute.

On appeal Beck's arrest was held to be unlawful. The clearing house slips were therefore inadmissible in evidence since they were obtained by means of an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

It was pointed out in the opinion that, when the validity of an arrest is challenged, the trial court must be informed of the facts upon which the arresting officers acted in order to determine whether they had probable cause to arrest. If an informer had furnished information to the officers which gave them probable cause to arrest Beck it was the prosecution's duty to show what the informer said and why the officers thought the information was credible. But the record failed to supply the necessary facts with sufficient specificity. Cf. *Draper* v. *United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959).

Probable cause must exist before the warrantless arrest, and an incident search may not precede and serve to justify the arrest. *Henry* v. *United States*, 361 U. S. 98, 80 S. Ct. 168, 4 L.Ed. 2d 134 (1959); *United States* v. *Di Re*, 332 U.S. 581, 595, 68 S. Ct. 222, 228, 92 L.Ed.2d 210, 220 (1948). Thus, where an officer, without previous information, observed a man talking to known drug addicts over a period of eight hours, but saw nothing pass between them, he had no probable cause to arrest and search the man for narcotics. *Sibron*

v. *New York*, 392 U.S. 40, 88 S. Ct. 1889, 20 L.Ed. 2d 917 (1968).

Here, the folded paper fastened to Bryson's finger was insufficient, standing alone, to give probable cause for his arrest. Since the record fails to establish a lawful arrest the evidence seized on Bryson was inadmissible and his conviction must be reversed.

■ As Bryson may be tried again, we will review the rulings of the trial court on two instructions.

Instruction No. 2, tendered by the Commonwealth, was given, over objection, as follows:

### "INSTRUCTION NO. 2

"The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the defendant did for himself or another person, buy, sell or transfer, or have in his possession for the purpose of sale or with intent to exchange, negotiate or transfer, or aid in selling, exchanging, negotiating or transferring, a chance or ticket in, or share of a ticket in, a lottery which consisted of the operation or conduct of a lottery commonly known as the numbers game or numbers racket, then you shall find the defendant guilty as charged in the indictment and fix his punishment at confinement in the penitentiary for a period of not less than one year nor more than ten years and a fine of not less than Five Hundred Dollars, or in your discretion, confinement in jail for not less than six months nor more than twelve months and a fine of not more than Five Hundred Dollars, either or both." [1]

---

[1] Although Bryson's indictment followed the language of clause (1) of Code § 18.1-340, no instruction was offered pursuant to that clause. Instruction No. 2 used language taken from clause (5) of the Code section.

Code § 18.1-340 reads:

"*Managing, etc., a lottery, etc., or buying, selling, etc., chances.*—If any person:

"(1) Set up, promote or be concerned in managing or drawing a lottery or raffle for money or other thing of value,

"(2) Knowingly permit such lottery in any house under his control,

"(3) Knowingly permit money or other property to be raffled for in such house, or to be won therein, by throwing or using dice, or by any other game of chance,

"(4) Knowingly permit the sale in such house of any chance or ticket in, or share of a ticket in, a lottery, or any writing, certificate, bill, token or other device purporting or intended to guarantee or assure to any person, or entitle him to a prize or share of, or interest in a prize to be drawn in a lottery, or,

"(5) For himself or another person buy, sell or transfer, or have in his possession for the purpose of sale or with intent to exchange, negotiate or transfer, or aid in selling, exchanging, negotiate or transferring, a chance or ticket in or share of a ticket in a lottery, or any such writing, certificate, bill, token or device,

Bryson contends that the instruction is wrong because it would permit the jury to convict of a felony one who buys, sells, or possesses for the purpose of selling, a chance on a numbers game without operating or conducting the game. We agree that the language of the instruction is subject to such misinterpretation.

Bryson excepted to the refusal of the trial court to give Instruction No. E, tendered by him to overcome his objection to Instruction No. 2, in the following language:

### "INSTRUCTION NO. E

"The Court instructs the jury that even if you believe from the evidence beyond a reasonable doubt that the Defendant, Roy Lee Bryson, did for himself or another person, buy, sell or transfer, or have in his possession for the purpose of sale or with the intent to exchange, negotiate or transfer, or aid in selling, exchanging, negotiating or transferring, a chance or ticket in, or share of a ticket in, a lottery but you have a reasonable doubt as to whether such act consisted of the operation or conduct of a lottery commonly known as a numbers game or numbers racket, then you will find the Defendant not guilty of the felony as charged in the indictment but only guilty of a misdemeanor and fix his punishment by confinement in jail not exceeding a year and a fine not exceeding $500.00 either or both."

There being no evidence that Bryson bought a chance there was no justification for including the word "buy" in either instruction. *Bradshaw* v. *Commonwealth*, 174 Va. 391, 4 S. E. 2d 752 (1939). With this exception Instruction No. E was a correct statement of the applicable law.

Instruction No. 2 was not a clear and accurate statement of the law. Indeed the Commonwealth concedes in its brief that the purchaser of a numbers chance is not guilty of a felony, but is guilty only of a misdemeanor.

---

"He shall be confined in jail not exceeding one year, and fined not exceeding five hundred dollars; provided that any person who shall violate any of the provisions of this section when such violation shall consist of the operation or conduct of a lottery commonly known as the numbers game or the numbers racket shall be confined in the penitentiary not less than one year nor more than ten years and fined not less than five hundred dollars, or in the discretion of the jury or the court trying the case without a jury, he shall be confined in jail not less than six months nor more than twelve months and fined not more than five hundred dollars, either or both."

Sale, and possession of evidence of sale, of chances are necessary parts of the operation and conduct of the numbers game. *Quidley* v. *Commonwealth*, 190 Va. 1029, 1038, 59 S. E. 2d 52, 56 (1950). *See also Motley* v. *Commonwealth*, 177 Va. 806, 810, 14 S. E. 2d 28, 29 (1940). But it does not follow that every sale, transfer, or instance of possession for the purpose of sale, of a chance constitutes operation and conduct of the game. For example, there could be a transfer of chances between players.

The 1958 amendment to the lottery statute (Acts 1958, Chapter 377) was intended to raise one gambling activity, operation of the numbers racket, to the level of a felony. It was not intended to make felons out of the ignorant victims who risk their nickels, dimes and quarters to the enrichment of the operators. Accordingly, we conclude that the instructions should properly make this distinction between the professionals who participate in the management of this nefarious racket and the poor but eager amateurs who simply support it.

*Reversed and remanded.*