COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Senior Judge Hodges
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                        MEMORANDUM OPINION[*] BY
v.   Record No. 0759-03-1          JUDGE JAMES W. BENTON, JR.
                                             JULY 18, 2003
ERIC LAMONT FLYTHE


            FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
                     Rodham T. Delk, Jr., Judge

          Steven A. Witmer, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellant.

          Anthony J. Nicolo (Ferrell, Sayer & Nicolo,
          P.C., on brief), for appellee.


     The grand jury indicted Eric Lamont Flythe for possession of

cocaine with intent to distribute.  The Commonwealth appeals from

the trial judge's pretrial order granting Flythe's motion to

suppress evidence.  See Code § 19.2-398.  For the reasons that

follow, we affirm the order.

                                I.

     "Upon appeal from a trial [judge's] ruling on a motion to

suppress, we must view the evidence in the light most favorable to

the prevailing party, in this instance [Flythe], granting to him

all reasonable inferences fairly deducible from the evidence."

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Commonwealth v. Spencer, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995). Moreover, "we are bound by the trial [judge's] findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). Viewed in this light, the evidence at the suppression hearing proved that Lynn Lawson, a convicted drug felon, approached Detective Walter Joyner on the street while the detective was investigating an incident unrelated to this prosecution. The detective testified that Lawson, who was "not a, per se, informant" but had "provided information to [the detective] in the past," said he had seen Antwon Hicks and Eric Lamont Flythe "selling crack cocaine and that they've got guns and they were the same people that shot at him before." The detective testified he asked Lawson "specifically did he see them selling crack." Lawson said he did and described the vehicle, giving a specific license plate number and a location.

When the detective drove to the location Lawson indicated, he did not see the vehicle. The detective testified that after he drove "up and down the street" looking for the vehicle, Lawson again approached him and said the vehicle was at an apartment complex. The detective drove to the apartments; however, he did not see the vehicle at that location. As the detective drove from the apartments, he received information from another officer and drove a distance of four blocks where he saw the vehicle.

-

Although Lawson had said two men were in the vehicle, the detective testified three men were in the vehicle when he saw it.

The detective and two officers followed the vehicle, "eventually" made the stop, and approached the vehicle with their guns unholstered.  Flythe asked why he had been stopped.  The detective told him they "had information he was dealing crack cocaine and had guns in the vehicle."  When Flythe denied having guns, the detective ordered him to exit the vehicle.  The detective testified that although Flythe was not under arrest, he was not free to leave.  He described the reason for detaining Flythe as follows:

> I would characterize it as we had information on individuals committing felonies and we were stopping them, consistent with the information we were given, and we were going to search them and do what we were suppose to do and that's why we stopped them.

The detective testified that Flythe continuously said he did not have drugs or guns and "was being evasive."  At one point, when Flythe "stuck his hand in his left pocket" and protested that the detective could not search him, the detective pointed his gun at him and ordered him to put his hand on the vehicle.  The detective testified that the following events occurred after he put cuffs on Flythe's wrists:

> I walked him over to my patrol car and as we got there, I began to pat him down and I was feeling his right pocket.  And in the process of feeling that I felt what appeared to be a rather linear object.  It wasn't

-

solid like a brick, but it appeared solid to me at the time. And I felt what I believed to be a plastic bag. And through feeling that, I felt hard objects in that. And from my experience of being a drug enforcement officer, I felt possibly he did have drugs in his pocket, so I went in his pocket and took that out, as well as the linear object at the same time.

* * * * * * *

After I found that, then I placed him under arrest for possession of cocaine with intent to distribute and continued to search him. Then I found another baggy in his left pocket which contained what appeared to be crack cocaine.

The detective further explained that when he "felt the plastic [during the frisk, he] was feeling all of it to try to find out what he had in his pocket." He also testified that the "linear object" was a piece of cloth. Another officer detained the passengers and arrested one of them for possessing a firearm after having been convicted of a felony.

Lawson testified that he was a probationer when these events occurred and that he had been convicted of six felonies, most of which were drug related. He described his participation as follows:

I was traveling Downtown Franklin. . . . It was me and my friend. And as I was going to the light. I looked over to the right. I seen [Flythe] on the phone. So I went over in the parking lot. . . . [H]e came to the van and the conversation was that I asked him why did he shoot at me [several months earlier] and he said that he thought I had a gun, that's why he shot at me. That was the conversation.

-

Q:   Y'all shook hands and left peacefully;
did you not?

A:   Yes, sir.

     *     *     *     *     *     *     *

Q:   And later on that evening you saw
Detective Joyner?

A:   Yes, sir.

Q:   Tell the Judge, please, about your
conversation with him.

A:   I told Joyner that it was an unknown
number called my house, saying that Eric and
his cousin were looking for me with a gun.

Q:   You specifically told that to Detective
Joyner?

A:   Yes, sir.

     *     *     *     *     *     *     *

Q:   And that person said that [Flythe] and a
friend of his had a gun and they were
looking for you?

A:   Yes.

Q:   And that's the specific information you
gave to Detective Joyner?

A:   (Witness nodding affirmatively.)  Well,
I said that they were looking for me with a
gun, right, and then I said -- I asked him
did he know [Flythe].  He said, "Yeah, I
know him, because of the incident that
happened between y'all like seven months
ago.  He shot at you and you came to the
police station and told the police."  But I
didn't take no warrant out on him.

     *     *     *     *     *     *     *

Q:   Did you give Detective Joyner a
description of the vehicle?

-

```
A:  Yeah, I told him it was a burgundy car,
Honda Accord.

Q:  Did you give him the license plate
number at that time?

A:  Yes, sir.
```

On cross-examination, Lawson testified that he did not know whether Flythe and his passenger had guns or drugs when he saw them in the parking lot.

Finding that the officer received a report "that Mr. Flythe had a gun . . .  I don't recall anybody saying they saw him brandish a gun, use a gun," the trial judge ruled that the officers had conducted "a proper Terry investigative stop."  The trial judge also found "that this [detention] is not an arrest, this is not a search incident to an arrest, . . . I've heard nothing to stand for that proposition."  When the prosecutor argued "there was an arrest" the trial judge responded "the Court's already ruled" and further noted as follows:

> [T]he only information, when he searched
> Mr. Flythe, was an informant's information.
> And I don't think we go around arresting
> people just because an informant hits the
> license plate number correct.  It takes more
> than that.

## II.

"At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving the challenged action did not violate the defendant's constitutional rights."  Russell v. Commonwealth, 33 Va. App. 604, 604, 535 S.E.2d 699, 701 (2000).

-

Although "[t]he test of constitutional validity is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed," Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970), "[p]robable cause to arrest must exist exclusive of the incident search." Russell, 33 Va. App. at 604, 535 S.E.2d at 702.

At the hearing, the prosecutor contended that the officer searched Flythe incident to an arrest. The trial judge found that although the officer had reasonable articulable suspicion sufficient to detain Flythe, the officer's search of Flythe was not predicated upon an arrest. He specifically found "this is not an arrest . . . because the only information, when he searched Mr. Flythe, was [a criminal] informant's information." In short, the judge found that the officer detained Flythe under Terry, not for an arrest, and that the frisk must be governed by Terry standards.

Despite the ruling by the trial court that no arrest had occurred, the prosecutor persisted in arguing that the search was justified as incident to arrest. The prosecutor advanced no other argument before the trial court to support the validity of the search at issue.

On appeal the Commonwealth does not contend the trial judge erred in ruling the officer's detention of Flythe was not an arrest. Instead, the Commonwealth contends the evidence proved

-

probable cause to make an arrest and to search incident to that arrest. However, because the Commonwealth failed to raise this argument before the trial court, we do not consider it for the first time on appeal. See Rule 5A:18; see also West Alex. Prop. v. First Va. Mort., 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court."); Floyd v. Commonwealth, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978) (holding that appellate court will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same general issue).

Accordingly, we affirm the judgment.

Affirmed.