COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Humphreys and Kelsey
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2668-05-1                      JUDGE ROBERT J. HUMPHREYS
                                                    APRIL 4, 2006
DOROTHY VINETTA BRIGGS


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Samuel Taylor Powell, III, Judge

        Leah A. Darron, Assistant Attorney General (Robert F. McDonnell,
        Attorney General, on brief), for appellant.

        D.R. Dansby for appellee.


        The Commonwealth appeals the trial court's ruling granting Dorothy Vinetta Briggs'

motion to suppress the evidence found during a traffic stop.  On appeal, the Commonwealth

contends that the trial court erred in finding that the officers could not ask Briggs whether she

had drug paraphernalia on her person, and in finding that the officers did not have reasonable

suspicion to conduct an investigatory stop.  For the following reasons, we hold that the trial court

erred in granting the motion to suppress, and, thus, we reverse and remand.

                                    BACKGROUND

        "In an appeal by the Commonwealth of an order of the trial court suppressing evidence,

the evidence must be viewed in the light most favorable to the defendant."  Commonwealth v.

Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992).  The trial court's "findings of fact

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Moreover,
as this opinion has no precedential value, we recite only those facts necessary to our holding.

are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." Id. So viewed, the evidence established the following.

On May 16, 2005, James City County Police Investigators Thomas Johnson ("Johnson"), Michelle Toutaint ("Toutaint"), and Damon Radcliffe ("Radcliffe"), pulled over a vehicle driven by Dorothy Vinetta Briggs ("Briggs"). The officers, who were members of the Colonial Narcotics Enforcement Task Force, were dressed in plain clothes and riding in an unmarked police car. Initially, the officers noticed Briggs when a man leaned into the passenger's side window of Briggs' vehicle while she was parked at the intersection of Pocahontas Trail and Magruder Avenue. The man got into Briggs' vehicle, Briggs drove one block, and the man then got out.[1] According to Johnson, Briggs then "made a sharp right, increased speed, [and] was driving on the . . . wrong side of the roadway." In fact, her vehicle was "all the way over to the grassy area." Johnson activated his emergency lights and effectuated a traffic stop as Briggs pulled into her driveway.

Johnson and Toutaint approached the driver's side of the vehicle, and Radcliffe stayed behind.[2] Johnson asked Briggs for her license and registration, and Briggs responded that her license was suspended. Johnson asked Briggs to step out of her vehicle, and he then asked if she had any type of identification. Briggs produced a Virginia I.D., but did not have her registration. While standing by the vehicle, Johnson radioed dispatch to confirm that Briggs had a suspended license.

---

[1] Johnson and Toutaint testified that this area was an open-air drug market. Based on their training and experience, the officers knew that individuals looking for drugs would often meet the dealer on the street, pick him or her up in the car, make the drug transaction, and then drop the dealer off a short distance later.

[2] The testimony differs as to where Radcliffe actually stood. Johnson testified that Radcliffe stayed by the police vehicle, while Toutaint testified that he was by the passenger side of Briggs' vehicle.

While waiting for a response, Johnson asked Briggs about the man who had been in her vehicle. He also asked Briggs if she "had anything illegal on her," and, if she did, he told her to turn it over "right now." Briggs denied having anything illegal on her person. However, Toutaint proceeded to ask Briggs "where her crack cocaine stem was." According to Toutaint, Briggs did not respond orally. Instead, Briggs "gave an affirmative head motion and proceeded to reach over the passenger's seat and pick up a red purse."

Briggs began to rummage through her purse. Fearing she might have a weapon, Johnson took the purse and searched it.[3] Inside, Johnson found a cocaine stem with cocaine residue. The officers then searched Briggs' car, but did not find any packaged cocaine. Johnson arrested Briggs, and, on September 24, 2005, Briggs was indicted on one count of possession of cocaine, in violation of Code § 18.2-250, and on one count of driving on a suspended license, in violation of Code § 46.2-301.

On October 25, 2005, the trial court granted Briggs' pretrial motion to suppress the cocaine stem and the cocaine residue. The trial court reasoned that the officers lacked "reasonable suspicion [to conduct an investigatory stop]," also noting that, "while she's in custody I don't think they are entitled to question her just about anything." The Commonwealth now appeals.

ANALYSIS

On appeal from a trial court's ruling on a motion to suppress, the appellant must show that the trial court's decision constituted reversible error. See Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993). We view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible

---

[3] Toutaint testified that Briggs willingly handed the purse to Johnson. Both officers testified that, in either circumstance, they did not ask Briggs for permission to search her purse.

therefrom, see Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), and we review the trial court's findings of historical fact only for clear error, see Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996). However, we review *de novo* the trial court's application of defined legal standards to the particular facts of a case. Id.; see also Ornelas v. United States, 517 U.S. 690, 697 (1996).

The Commonwealth contends the trial court erred in finding (1) that the officers could not ask questions regarding drug paraphernalia without first giving Miranda warnings, and (2) that the officers did not have reasonable suspicion to conduct an investigatory stop. We agree, and, thus, reverse and remand this case for further proceedings consistent with this opinion.

A. *Whether Miranda Warnings Were Required to Continue Questioning*

Initially, we must consider whether the officers, without first administering Miranda warnings, were permitted to ask Briggs questions unrelated to the original purpose of the traffic stop. Because Briggs was not in custody when the officers asked whether she possessed any drug paraphernalia, we hold that the United States Supreme Court's holding in Miranda v. Arizona, 384 U.S. 436 (1966), was not implicated. Accordingly, the officers' questioning did not implicate Briggs' Fifth Amendment right against compelled self-incrimination.

Miranda warnings are required whenever a suspect is subjected to "custodial interrogation." Miranda, 384 U.S. at 444. However, every detention does not necessarily constitute custodial interrogation for purposes of Miranda. Rather, a person is in custody for Miranda purposes only when the person's "freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) *(per curiam)*).

Whether a suspect is "in custody" for purposes of Miranda turns upon "how a reasonable man in the suspect's position would have understood his situation." Id. at 442. In other words,

- 4 -

"a suspect is 'in custody' when the objective circumstances would lead a reasonable person to believe he was under arrest, thereby subjecting him or her to pressure impairing the free exercise of the privilege against self-incrimination." Cherry v. Commonwealth, 14 Va. App. 135, 140, 415 S.E.2d 242, 244-45 (1992); see also Bosworth v. Commonwealth, 7 Va. App. 567, 572, 375 S.E.2d 756, 759 (1989) ("A motorist stopped by police for a traffic infraction is not subject to the protections prescribed by Miranda until he is subjected to treatment that places him in custody." (internal citations omitted)). "The circumstances may include factors such as the familiarity or neutrality of the surroundings, the number of officers present, the degree of physical restraint, the duration and character of the interrogation, the presence of probable cause to arrest, and whether the suspect has become the focus of the investigation." Id. (citing Wass v. Commonwealth, 5 Va. App. 27, 33, 359 S.E.2d 836, 839 (1987)).

Based upon this definition of "custody," this Court has held that

> [a] routine, roadside traffic stop and the usual questioning associated with such a brief stop generally will not be considered "custodial interrogation" because the detention is usually of very short duration and the attendant circumstances "are not such that the motorist feels completely at the mercy of police." Such stops are usually in public and only one or perhaps two officers are usually present. Consequently, Miranda warnings are not required prior to the type [of] questioning usually associated with such stops.

Cherry, 14 Va. App at 138-39, 415 S.E.2d at 243-44. Moreover, even if the underlying purpose of the traffic stop is to investigate possible narcotics activity, that stop does not automatically become "custodial" for purposes of Miranda. Id. That is, regardless of the officer's subjective purpose in "seizing" the suspect, the test for "custody" remains the same. Hence, Miranda rights must be given to a traffic stop detainee only if the individual has been formally arrested, or if the individual's freedom has been curtailed "to a degree associated with arrest." United States v. Sullivan, 138 F.3d 126, 130 (4th Cir. 1998).

In this case, we find that Briggs was not in custody for purposes of <u>Miranda</u>. Although Briggs was not "free to leave" and, thus, had been "seized" within the meaning of the Fourth Amendment, the test for <u>Miranda</u> requires more. The critical issue is whether Briggs was in custody or otherwise deprived of her freedom of action in any significant way. <u>Miranda</u>, 384 U.S. at 444; <u>May v. Commonwealth</u>, 3 Va. App. 348, 352, 349 S.E.2d 428, 430 (1986). In other words, we must determine if Briggs was detained to a "degree associated with formal arrest." <u>Berkemer,</u> 468 U.S. at 440. We conclude that she was not.

Here, Briggs was pulled over by three plainclothes officers in an unmarked police truck. Two of the officers approached the driver's side door and asked Briggs for her identification. The officers did not draw their weapons, nor did they use any other method of force. Although Johnson retained Briggs' identification while waiting for a response from dispatch, Briggs was not placed in handcuffs.[4] Moreover, Briggs was not told she was under arrest until after Johnson found her cocaine "stem." Thus, although the officers had properly detained Briggs because of a traffic violation supported by probable cause, and although Toutaint testified that Briggs was not "free to leave," we find that these circumstances do not present a situation equivocal to a formal arrest. Therefore, we find that the trial court erred in finding <u>Miranda</u> warnings should have been given before the officers could continue to question Briggs.

---

[4] Briggs argues that Johnson's failure to return her identification should be considered when addressing the issue of whether Briggs was in custody for the purposes of <u>Miranda</u>. Briggs cites <u>Richmond v. Commonwealth,</u> 22 Va. App. 257, 468 S.E.2d 708 (1996), to support the contention that Johnson's retention of Briggs' identification automatically turned the stop into an investigative detention, during which Briggs was not "free to leave." We agree with that contention, as Toutaint testified that Briggs was not "free to leave." However, as we note below, "custody" implicating <u>Miranda</u> is conceptually distinct from a "seizure" implicating the Fourth Amendment. Thus, although the issue of whether the defendant had been "seized" within the meaning of the Fourth Amendment may be a factor in determining whether Briggs was in custody for purposes of <u>Miranda</u>, it is not dispositive.

B. *Whether the Officers Violated Briggs' Fourth Amendment Rights*

We must next decide whether the seizure, and the resulting search of Briggs' purse, violated her Fourth Amendment rights. For the following reasons, we hold that both the initial seizure and the resulting search pass muster under the Fourth Amendment. Accordingly, we hold that the trial court erred in granting Briggs' motion to suppress.

1. The Initial Seizure Was Valid

Initially, we note that "[t]he 'custody' that implicates the Miranda rule is conceptually distinct from a seizure implicating the Fourth Amendment. . . . Even though a routine traffic stop does not amount to a custodial detention of the motorist, it does constitute a 'seizure' within the meaning of the Fourth Amendment." Sullivan, 138 F.3d at 131. Thus, because a traffic stop constitutes a "seizure," the stop must be supported by either reasonable suspicion or probable cause to believe a crime, such as a traffic violation, has occurred. See Dickerson v. Commonwealth, 35 Va. App. 172, 177, 543 S.E.2d 623, 626 (2001). As long as the stop is supported by reasonable suspicion or probable cause, the officer who made the stop may "request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation." United States v. Shabazz, 993 F.2d 431, 437 (5th Cir. 1993).

Once the purpose of the traffic stop has been completed, however, the stop may not be extended absent consent or additional information amounting to reasonable suspicion or probable cause. See Dickerson, 35 Va. App. at 178, 543 S.E.2d at 626. However, during the stop, the officer may question the person on subjects not directly related to the reasons that provided the basis for the stop, even if he lacks reasonable suspicion as to the unrelated subjects. See Muehler v. Mena, 544 U.S. 93 (2005) (holding that officers are not required to have independent reasonable suspicion in order to question individuals on subjects not related to the purpose of the stop); Illinois v. Caballes, 543 U.S. 405 (2005) (holding that a dog sniff performed during a

- 7 -

traffic stop does not violate the Fourth Amendment); <u>Shabazz</u>, 993 F.2d at 437 (approving questioning about travel plans and request for consent to search from driver stopped for speeding while police awaited results of computer check of driver's license).  The officer can ask these unrelated questions so long as "the detention to that point continues to be supported by the facts that justified its initiation," and "the questioning [does] nothing to extend the duration of the initial, valid seizure."  <u>Id.</u>; <u>see also</u> <u>United States v. Childs</u>, 277 F.3d 947 (7th Cir. 2002) (en banc); <u>State v. Hickman</u>, 763 A.2d 330, 336-38 (N.J. Super. Ct. App. Div. 2000).  <u>But see</u> <u>United States v. Holt</u>, 264 F.3d 1215, 1229-30 (10th Cir. 2001) (en banc) (rejecting reasoning of <u>Shabazz</u>).

In this case, the officers first noticed Briggs because of behavior consistent with a drug transaction.  Specifically, a man approached her passenger window, got into the car, rode one block, and then exited the vehicle.  However, the officers then watched Briggs violate a traffic law.  Specifically, Briggs made a sharp turn and drove a short distance on the wrong side of the road.  Thus, according to Johnson, he had two concerns when he pulled over the vehicle:  "[one,] that the vehicle was driving on the wrong side of the roadway.  Two, it was possible that the operator just purchased drugs from the male that got out of the car."

Here, regardless of whether the officers had reasonable suspicion to believe a drug transaction had taken place, the record clearly indicates that Briggs was driving on the wrong side of the road.  This gave Johnson probable cause to stop the vehicle.  Accordingly, Briggs' initial seizure did not violate the Fourth Amendment.  Also, while Johnson was waiting for dispatch to confirm whether Briggs' license was suspended, he asked Briggs about her encounter with the male passenger.  Although the questions were not related to why she may have been driving on the wrong side of the road, the justification for the stop had not yet been completed.

Moreover, the questions did not prolong the detention. Therefore, we hold that Johnson's and Toutaint's questions did not impermissibly extend the scope of the stop.

For these reasons, we hold that the initial seizure, even when coupled with the officers' questioning, did not violate Briggs' Fourth Amendment rights.

2. The Resulting Search of Briggs' Purse Did Not Violate the Fourth Amendment

When an officer, "trained and experienced in crime control, ha[s] probable cause to believe [a] defendant [i]s participating in a felony committed in [his] presence," that officer "ha[s] the right to make a warrantless arrest." Brinegar v. United States, 338 U.S. 160 (1949); Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970). And because the warrantless arrest is lawful, the officer may conduct a warrantless search of the defendant's person incident to that lawful arrest, regardless of whether the object of the search is weapons or evidence. Chimel v. California, 395 U.S. 752, 763 (1969); Draper v. United States, 358 U.S. 307, 314 (1959). When the product of the search is not essential to probable cause to arrest, and "the formal arrest follow[s] quickly on the heels of the challenged search of [the defendant's] person," it is not "particularly important that the search preceded the arrest rather than vice versa." Rawlings v. Kentucky, 448 U.S. 98, 111 (1980).

In this case, Johnson asked Briggs if she "had anything illegal on her." Briggs initially denied having anything illegal on her person. However, Toutaint asked Briggs "where her crack cocaine stem was," and Briggs "gave an affirmative head motion and proceeded to reach over the passenger's seat and pick up a red purse." According to Johnson, he then asked Briggs if the "stem" was in her purse, to which Briggs responded "yes." However, Toutaint could not recall whether Johnson asked this question.[5]

_____

[5] Although the testimony is not in conflict — i.e., Toutaint did not unequivocally state that Johnson did not ask the question — we must, and do, view the testimony in the light most

- 9 -

Clearly, Briggs had the opportunity to say that she did not have a crack stem. Instead, when asked where her stem was, Briggs nodded with her head and reached for her purse. In essence, Briggs admitted that she possessed a crack cocaine stem. This gave Johnson and Toutaint probable cause to believe that Briggs was committing a felony in their presence, as well as the authority to make a warrantless arrest. See Brinegar, 338 U.S. at 160; Bryson, 211 Va. at 86-87, 175 S.E.2d at 250. The fact that Johnson retrieved the stem immediately before arresting Briggs "is not particularly important," and, thus, does not invalidate the search. Rawlings, 448 U.S. at 111. Therefore, we hold that Johnson did not violate Briggs's Fourth Amendment rights when he searched Briggs' purse.

CONCLUSION

For these reasons, we hold that, because Briggs was not in "custody," the officers were not required to give Miranda warnings prior to asking Briggs whether she possessed any illegal narcotics paraphernalia. Moreover, because the initial traffic stop was supported by probable cause, and because the officers did not impermissibly extend the scope of the stop by asking questions regarding drug paraphernalia, we hold that Briggs' seizure did not violate the Fourth Amendment. Finally, because the officers had probable cause to arrest Briggs prior to opening her purse, we hold that the search was a valid search incident to arrest and, thus, did not violate the Fourth Amendment. Accordingly, we reverse the trial court's decision granting the motion to suppress and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

favorable to Briggs as the party who prevailed below. Grimstead, 12 Va. App. at 1067, 407 S.E.2d at 48.