COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judge Petty and Senior Judge Coleman
Argued by teleconference


GERALD EUGENE KISER
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2189-05-3                      JUDGE SAM W. COLEMAN III
                                                         DECEMBER 28, 2006
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF RUSSELL COUNTY
                               Michael L. Moore, Judge

            Robert M. Galumbeck (Galumbeck, Dennis & Kegley, on brief), for
            appellant.

            Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        After entering a conditional plea of guilty, Gerald Eugene Kiser was convicted in a bench

trial of possession with the intent to distribute a controlled substance, in violation of Code

§ 18.2-248.  Kiser's appeal addresses whether the trial court erred by denying his motion to

suppress evidence, which he contends was (1) seized during an illegal detention and (2) as a result

of subsequent questioning by the police officer, without the officer's having advised him of his

rights as required by Miranda v. Arizona, 384 U.S. 436 (1966).  For the following reasons, we

affirm the judgment of the trial court.

                                    BACKGROUND

        At about 8:00 p.m. on January 3, 2004, Russell County Deputy Sheriff Justin McCulley

activated his flashing lights and stopped a vehicle, driven by Chastity Couch, for a traffic violation.

Kiser was the front seat passenger, and a third person occupied the rear passenger seat.  After

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

determining that Couch was the registered owner of the vehicle and that her registration and operator's license were in order, McCulley released her with a warning and told her "she was free to go." Couch acknowledged she understood she was free to go. Deputy McCulley then asked Couch for permission to search her vehicle, and Couch consented. Couch had remained in the driver's seat up to this point in the encounter, and Kiser had remained in the front passenger seat.

After Couch consented to the search, Deputy McCulley asked her to step out of the vehicle to discuss the search, and while the two stood beside the driver's open window, McCulley told her the search was being conducted based on her consent and that she was free to revoke her consent at any time. Deputy McCulley then searched the driver's side of the vehicle and found no contraband. He walked to the passenger side of the car, opened the passenger door, and began to search that side. Kiser, who was seated in the front passenger seat, asked McCulley whether he needed to get out of the car. McCulley responded that it did not matter, he could search around him. Kiser responded, "Well, I'll just get out," voluntarily exited, and walked toward the rear of the vehicle.

As Kiser walked, Deputy McCulley asked him whether he was in possession of anything illegal. Kiser replied that he was not. McCulley, using what he described as a "common" tone of voice, asked Kiser for permission to search him. Kiser consented and immediately began removing items from his pockets. Kiser turned his left pants pockets completely inside out, placing all of their contents on the car's trunk. He also removed items from his right pants pocket, but he did not turn it inside out and appeared to be pulling some things out of that pocket while trying to leave other items concealed. Deputy McCulley said that, based on his training and experience, he believed Kiser may have had some "type of illegal items or a weapon on his person."

When Kiser appeared to be finished removing items from his pockets, Deputy McCulley again asked Kiser for permission to search him and again Kiser consented. McCulley reached into Kiser's left shirt pocket and pulled out a "hollowed out ink pen, that had powder residue on it."

McCulley then reached into Kiser's right shirt pocket and removed three glass "crack" pipes, each containing residue. McCulley, who had previously worked with the Drug Task Force, recognized the pipes as the type used to smoke methamphetamine. He observed that the residue on the pipes was consistent with methamphetamine.

Deputy McCulley then asked Kiser, "Where's your stash at?" Kiser replied that it was in his pocket. McCulley told Kiser, "let me have it," and Kiser produced two plastic Ziploc bags from his right pants pocket, each bag containing a number of individually wrapped packages of a substance that McCulley recognized as being consistent with methamphetamine. At the suppression hearing, McCulley indicated on cross-examination that his emergency lights were on throughout the encounter with Kiser.

In an opinion letter, the trial court denied the motion to suppress, finding the detention for the traffic infraction became consensual following McCulley's statement to Couch that she would receive only a warning and was free to leave. The trial court ruled that McCulley's initial encounter with Kiser was consensual but became a seizure of Kiser for Fourth Amendment purposes when McCulley discovered in Kiser's pockets the hollow pen and glass pipes, which appeared to be drug paraphernalia. The trial court concluded that while Kiser had been seized at that point and should have been given Miranda warnings before questioning him as to the location of his "stash," nevertheless, the drugs ultimately would have been discovered upon arrest or processing at the jail and, thus, were admissible under the "inevitable discovery" rule. See, e.g., Commonwealth v. Jones, 267 Va. 532, 535-38, 593 S.E.2d 204, 206-08 (2004).

## ANALYSIS

The issues before us are (1) whether Kiser was illegally seized and detained in violation of the Fourth Amendment to the United States Constitution during and as a result of which drugs were illegally seized from him, and (2) whether the drugs were seized as a result of a custodial

interrogation without his having been advised of his <u>Miranda</u> rights in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 8, of the Constitution of Virginia.[1]  If the drugs were seized in a manner that violated Kiser's Fourth or Fifth Amendment constitutional protections, then, Kiser asserts, the drug evidence, which was the sole basis for his conviction, should have been suppressed and the charges against him dismissed.

FOURTH AMENDMENT CLAIM
<u>Consensual Encounters and Police Detentions</u>

"'On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'" <u>Slayton v. Commonwealth</u>, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003) (quoting <u>Barkley v. Commonwealth</u>, 39 Va. App. 682, 687, 576 S.E.2d 234, 236 (2003)).  An appellant's claim that evidence was seized in violation of the Fourth Amendment "'presents a mixed question of law and fact that we review *de novo* on appeal.  In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment.'"  <u>Wilson v. Commonwealth</u>, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (quoting <u>Murphy v. Commonwealth</u>, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (citations omitted)).

---

[1] Settled principles provide that:

> The privilege against compelled testimony under Article I, § 8 of the Virginia Constitution is no broader in its application than its [federal] counterpart[,] . . . the Fifth Amendment of the United States Constitution . . . .  Therefore, . . . precedent interpreting the Fifth Amendment right against self-incrimination [is] equally applicable to the challenges made under Article I, § 8 of the Virginia Constitution.

<u>Farmer v. Commonwealth</u>, 12 Va. App. 337, 340, 404 S.E.2d 371, 372 (1991) (*en banc*).

> Fourth Amendment jurisprudence "has placed police-citizen confrontations into three categories." "First, there are communications between police officers and citizens that are consensual and, therefore, do not implicate the fourth amendment." Second, are "brief investigatory stops" based upon "specific and articulable facts" and third, are "highly intrusive, full-scale arrests" based upon probable cause.

Payne v. Commonwealth, 14 Va. App. 86, 88-90, 414 S.E.2d 869, 869-70 (1992) (quoting

Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988)) (citations omitted).

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002); see also Florida v. Bostick, 501 U.S. 429, 434 (1991). Furthermore, "'[a]n encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting a[n] . . . investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter.'" Londono v. Commonwealth, 40 Va. App. 377, 399, 579 S.E.2d 641, 651 (2003) (quoting McGee v. Commonwealth, 25 Va. App. 193, 199, 487 S.E.2d 259, 262 (1997) (*en banc*)). During a consensual encounter, a citizen may validly consent to a search of his person or property, and "searches made by the police pursuant to a valid consent do not implicate the Fourth Amendment." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (*en banc*). A person need not be told of his right to refuse consent in order for that consent to be voluntary. E.g. Barkley v. Commonwealth, 39 Va. App. 682, 696, 576 S.E.2d 234, 241 (2003). Similarly, the fact that a person is "in custody at the time he or she consents to a search is not sufficient in itself to demonstrate a coerced consent." Reynolds v. Commonwealth, 9 Va. App. 430, 439, 388 S.E.2d 659, 665 (1990). Rather, the totality of the circumstances is controlling. Barkley, 39 Va. App. at 696, 576 S.E.2d at 241.

"In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority." Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (*en banc*) (citing California v. Hodari D., 499 U.S. 621, 628 (1991)). An encounter between a police officer and a citizen becomes a seizure for Fourth Amendment purposes "'only if, in view of all the circumstances surrounding the incident, a *reasonable person* would have believed that he was not free to leave,'" Baldwin v. Commonwealth, 243 Va. 191, 196, 413 S.E.2d 645, 648 (1992) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)), because the citizen's freedom of movement was being restrained by the use of physical force or show of authority, Hodari D., 499 U.S. at 626-27.

Among the factors that determine whether an officer "by means of physical force or a show of authority" would cause a reasonable person to feel seized, Mendenhall, 446 U.S. at 553; see also Sykes v. Commonwealth, 37 Va. App. 262, 268, 556 S.E.2d 794, 797 (2001), are the "'threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" Londono, 40 Va. App. at 398-99, 579 S.E.2d at 651 (quoting Mendenhall, 446 U.S. at 554).

Kiser argues that the facts in the Supreme Court's holding in Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), are "on all fours with this case" and require us to hold that Kiser was seized without reasonable suspicion or probable cause when Deputy McCulley asked him for consent to search him after having told Couch that she was free to leave. Kiser says that the Reittinger Court held that stopping Reittinger for a traffic infraction but then asking him for permission to search after telling him that he was free to leave would amount to a seizure because a reasonable person would then conclude that he was not free to leave under those circumstances. Thus, relying upon Reittinger, Kiser contends we are required to find, as

did the trial court, that he was seized and did not feel free to leave from the time Deputy McCulley asked him for consent to search. And, therefore, because he had been illegally seized at the time McCulley searched him and seized the drug paraphernalia with residue and then asked for his "stash," the evidence obtained during that illegal detention should have been suppressed.

Accepting the trial court's historical factual findings, we review *de novo* whether those facts support the legal conclusion that Kiser was seized under the circumstances here and that the encounter was no longer consensual when McCulley asked for consent to search him. We disagree that the facts in this case are analogous to the facts in Reittinger or that the holding there controls this case. In Reittinger, two sheriff's deputies stopped a van driven by Reittinger for a traffic infraction. After giving Reittinger a verbal warning, the deputy told him he was "free to go." Id. at 234, 532 S.E.2d at 26. Nevertheless, the deputy continued the encounter by asking Reittinger whether he had any illegal weapons or drugs in the vehicle, to which Reittinger replied there was nothing illegal in the van. Id. One of the deputies then asked Reittinger to waive his Fourth Amendment right by giving permission to search the van. Id. Reittinger did not respond immediately, so the deputy twice repeated the request to search. Id.

Reittinger still did not respond to the third request to search, but instead, and quite significantly, he exited the van. Id. The deputy observed a bulge in Reittinger's pants pocket and, without having obtained consent, conducted a "pat down" search of Reittinger. Id. Reittinger ultimately removed an object that proved to be a smoking pipe containing marijuana residue. Id. The Supreme Court held "we do not think that a reasonable person, under the circumstances, would have considered that he was free to disregard the deputies and simply drive away." Id. at 237, 532 S.E.2d at 28. In so holding, the Supreme Court noted that Reittinger had been stopped in a rural area in the nighttime "in the presence of two armed deputies, one on each

- 7 -

side of the vehicle." Id. at 234-35, 532 S.E.2d at 26. Most significantly, the Supreme Court accepted the trial court's finding that after Reittinger was told he was free to leave and while still in his van, he was "subjected to a new and unrelated inquiry [and] would conclude his detention continued . . . and [that] the reasonable inference to be drawn from [Reittinger's] voluntarily exiting his vehicle is that [he] concluded he was not free to leave." Id. at 236, 532 S.E.2d at 27.

Here, as in Reittinger, the trial court found that Kiser had been seized. However, the nature and duration of the seizure were different than in Reittinger. In Reittinger, the defendant was the driver of the vehicle and was seized at the moment the two deputies stopped his vehicle for a traffic infraction. Reittinger remained "seized" for the duration of the initial traffic stop, until the officers told him he was free to leave, and the Court found the seizure continued when the two armed deputies immediately inquired if he had any illegal weapons or drugs in the vehicle and asked him three times for consent to search it.

In Kiser's case, by contrast, Kiser was merely a passenger in a vehicle stopped by a single officer for a traffic infraction. Assuming without deciding the traffic stop constituted a seizure of Kiser to the same extent it constituted a seizure of Couch, the vehicle's driver, that seizure ended before Deputy McCulley asked Kiser for consent to search his person. After Deputy McCulley determined Couch's registration and operator's license were in order, he told Couch she was "free to go." Couch, while sitting in the driver's seat next to Kiser, acknowledged to Deputy McCulley that she understood she was free to go. See Dickerson v. Commonwealth, 266 Va. 14, 18, 581 S.E.2d 195, 197 (2003) (holding Reittinger not controlling because when traffic stop concluded and officer told driver he was free to leave, driver "returned to his vehicle and started to get inside," conduct Court found was "not consistent with a belief that one is under police detention or subject to [ongoing] police control"). At that point, it would have been apparent to Kiser that he was not being detained and was free to leave, as well.

- 8 -

Couch's subsequent agreement to allow Deputy McCulley to conduct a consent search of the vehicle did not change this fact.

Further, Kiser exited during McCulley's consent search of the vehicle only after Kiser asked McCulley whether he needed to get out and McCulley responded that it did not matter because McCulley could search around him. These facts stand in contrast to Reittinger, in which the Court found the driver's exiting the vehicle was in direct response to the officers' repeated requests for permission to search and constituted the driver's submission to a show of authority amounting to an ongoing seizure. Here, by contrast, Kiser was a passenger in the vehicle whose driver had acknowledged in Kiser's presence that she knew she was free to leave, see Dickerson, 266 Va. at 18, 581 S.E.2d at 197, and Kiser exited voluntarily after Officer McCulley expressly stated that it did not matter if Kiser remained in the car or exited. Thus, unlike Reittinger, Kiser was not seized at the time he exited the vehicle.

Once Kiser voluntarily exited the vehicle, Deputy McCulley did nothing more than have a consensual conversation with Kiser and ask for permission to search him. Kiser twice consented to be searched, and nothing in the record suggests McCulley, the only officer at the scene, coerced Kiser into consenting. McCulley did not physically touch Kiser, make any threats or demands, draw his weapon, or engage in any other form of aggressive or coercive behavior. Thus, not only was the initial encounter between Kiser and McCulley consensual, but also the seizure from Kiser's shirt pockets of the drug paraphernalia containing residue resulted from a consensual search.

Once Deputy McCulley seized and examined the "hollowed out ink pen" with "powder residue on it" and the three glass "crack" pipes also bearing residue, he had probable cause to effect a custodial arrest of Kiser.

Consistent with Fourth Amendment principles and Virginia law, an officer making "a lawful custodial arrest" for a felony may conduct "a full field-type search of the person incident to [that] . . . arrest." Moore v. Commonwealth, 272 Va. 717, 721, 636 S.E.2d 394, 397 (2006) (citing United States v. Robinson, 414 U.S. 218, 235 (1973)).

"'[T]he test of constitutional validity [of a warrantless arrest] is whether at the moment of arrest the arresting officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been committed.'" DePriest v. Commonwealth, 4 Va. App. 577, 583-84, 359 S.E.2d 540, 543 (1987) (quoting Bryson v. Commonwealth, 211 Va. 85, 86-87, 175 S.E.2d 248, 250 (1970)). Probable cause for a custodial arrest must exist exclusive of the incident search. Bryson, 211 Va. at 87, 175 S.E.2d at 251; see Moore, 272 Va. at 724, 636 S.E.2d at 399-400 (holding "full field-type search" authorized only where probable cause exists for custodial arrest and not for offense for which release on summons is required). So long as probable cause to effect a custodial arrest exists at the time of the search, however, it is unimportant that the search preceded the formal arrest if the arrest "'followed quickly on the heels of the challenged search.'" Wright v. Commonwealth, 222 Va. 188, 193, 278 S.E.2d 849, 852-53 (1981) (quoting Rawlings v. Kentucky, 448 U.S. 98, 111 (1980)). Further, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)).

Here, a search of Kiser was objectively reasonable under the Fourth Amendment based on the existence of probable cause to arrest Kiser for possession of methamphetamine, a Class 5

felony, in the form of the residue on the pipes. See Code § 18.2-250 (proscribing possession of any Schedule II controlled substance as Class 5 felony); § 54.1-3448 (defining Schedule II controlled substances to include "[a]ny substance which contains *any quantity* of methamphetamine" (emphasis added)); cf. Reed v. Commonwealth, 36 Va. App. 260, 270, 549 S.E.2d 616, 621 (2001) (holding possession of pipe with cocaine residue sufficient to support conviction for possession of cocaine). Deputy McCulley, who had previously worked with the Drug Task Force, testified that he recognized the pipes as the type used to smoke methamphetamine and that the residue on the pipes was consistent with methamphetamine residue. This evidence gave McCulley probable cause to effect a custodial arrest of Kiser for possessing methamphetamine, a Class 5 felony, in the form of the residue on the pipes.

Instead of arresting and searching Kiser, however, Deputy McCulley asked "Where's your stash at?" and Kiser responded it was in his pocket. Deputy McCulley then said, "let me have it," and Kiser produced two bags of suspected methamphetamine from his pants pocket. We need not decide whether this exchange was the functional equivalent of a search. Compare Neely v. State, 402 So. 2d 477, 479 (Fla. Ct. App. 1981) (holding no search where officer asked defendant what was in his pocket and defendant handed over the objects), with State v. Naeole, 910 P.2d 732, 735-36 (Haw. 1996) (holding search occurred where defendant removed items from her pants "in response to [officer's] direct order, thus creating an involuntary removal"). Because Deputy McCulley already had probable cause to arrest Kiser for felony possession of methamphetamine, based on his discovery of the pipes and residue, the "search," if one occurred, was reasonable under the Fourth Amendment as one conducted pursuant to a custodial arrest. Thus, exclusion of the bags of methamphetamine was not required by the Fourth Amendment.

We turn next to the question whether the drugs Kiser relinquished in response to McCulley's questions were obtained in violation of the Fifth Amendment.

- 11 -

FIFTH AMENDMENT CLAIM
Right to Counsel and Miranda Warnings

The Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 6 (1964), requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Although "the core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial," United States v. Patane, 542 U.S. 630, 637 (2004) (plurality op.), it also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings," Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). Thus, "[w]here an accused in a criminal case is subjected to custodial police interrogation, he first must be advised of his Fifth Amendment rights as defined in Miranda . . . for any statement he makes to be admissible in evidence." Commonwealth v. Thornton, 24 Va. App. 478, 488, 483 S.E.2d 487, 491 (1997). Here, Kiser attempts to suppress the methamphetamine he turned over to McCulley in response to McCulley's query, "Where's your stash at?" We assume without deciding that Kiser was "in custody" for purposes of Miranda when Officer McCulley asked him about his "stash."

Although *statements* obtained by law enforcement officers in violation of Miranda and the Fifth Amendment generally will be subject to exclusion for most proof purposes in a criminal trial, Miranda, 384 U.S. at 479, the United States Supreme Court has held that failure to read a suspect his Miranda rights does not require "suppression of *the physical fruits* of the suspect's unwarned but voluntary statements," Patane, 542 U.S. at 634 (plurality op.) (emphasis added); see id. at 644-45 (Kennedy, J., joined by O'Connor, J., concurring in the judgment). This is so because "'[t]he word "witness" in the constitutional text limits the relevant category of compelled incriminating communications to those that are "testimonial" in character.'" Rowley

- 12 -

v. Commonwealth, 48 Va. App. 181, 183, 629 S.E.2d 188, 189 (2006) (quoting United States v. Hubbell, 530 U.S. 27, 34 (2000)).  The Self-Incrimination Clause cannot be violated by the introduction of non-testimonial evidence obtained as a result of voluntary statements.[2]  Patane, 542 U.S. at 637 (plurality op.); id. at 644-45 (Kennedy, J., joined by O'Connor, J., concurring in the judgment).  "In short, the privilege against self[-]incrimination is simply 'not concerned with nontestimonial evidence.'"  Rowley, 48 Va. App. at 183, 629 S.E.2d at 189 (quoting Oregon v. Elstad, 470 U.S. 298, 304 (1985)).  Accordingly, physical evidence obtained in reliance on statements taken in violation of Miranda is admissible against an accused at trial.  Patane, 542 U.S. at 634 (plurality op.); id. at 644-45 (Kennedy, J., joined by O'Connor, J., concurring in the judgment).

Although Kiser's act of producing his illicit drugs provided McCulley with incriminating evidence against him, the drugs themselves are not testimonial in character.  Even assuming as we do, for purposes of this opinion only, that McCulley's questioning of Kiser constituted a custodial police interrogation for which Miranda warnings should have been administered, the drugs are exempt from the constitutional testimonial privilege against self-incrimination.  Thus, the trial court did not err in admitting the bags of methamphetamine into evidence.

### CONCLUSION

For the foregoing reasons, we affirm Kiser's conviction for possession of a controlled substance with intent to distribute.

Affirmed.

---

[2] Kiser relies only on the argument that he is entitled to a presumption of coercion based on Deputy McCulley's failure to advise him of his rights under Miranda.  He does not contend any other circumstances rendered his statement involuntary for Fifth Amendment purposes.  Thus, for purposes of our Fifth Amendment analysis, we consider only the impact of Deputy McCulley's failure to administer Miranda warnings.